**Norman RICH et al., Plaintiffs,**

v.

**TOUCHE ROSS & CO., Defendant.**

**No. 74 Civ. 772–CLB.**

United States District Court,
S. D. New York.

April 15, 1976.

Julien & Schlesinger, by Alfred S. Julien, Stuart A. Schlesinger, David Jaroslawicz, New York City, for plaintiffs.

Rosenman, Colin, Kaye Petschek Freund & Emil, by Arnold I. Roth, Arthur Linker, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiffs' second amended complaint, filed June 11, 1975, premises this Court's subject matter jurisdiction upon § 27 of the Securities Exchange Act of 1934 ["the 1934 Act"], 15 U.S.C. § 78aa, and principles of pendent jurisdiction. This complaint pleads two claims of fraud based upon §§ 10(b) and 18 of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78r, and related rules of the Securities

and Exchange Commission ["SEC"], and a third claim charging common law negligence or accountant's malpractice. The Court has previously dismissed plaintiffs' amended complaint for failure to plead the fraud with the particularity required by Rule 9(b), F.R.Civ.P., but granted plaintiffs leave to file this second amended complaint. [68 F.R.D. 243 (S.D.N.Y.1975).]

Defendant moves, pursuant to Rule 12(b)(6), F.R.Civ.P., for an order dismissing this third complaint for failure to state a federal claim upon which relief can be granted, and for consequent lack of pendent subject matter jurisdiction as to the common law claim. In the alternative, if a claim is stated under § 18 of the 1934 Act, defendant seeks an order requiring plaintiffs to post security for the costs of this action.

This complaint, like its predecessors, is captioned as a class action, in which plaintiffs seek to represent all customers of Weis Securities, Inc. ["Weis"] as of May 24, 1973, when a Securities Investor Protection Corporation ["SIPC"] trustee was appointed for that stock brokerage firm. The plaintiff trustees were cash account customers of Weis, and plaintiff Shurpin maintained a margin account with that firm.

Until May 24, 1973, Weis was a member of the New York Stock Exchange ["NYSE"] and other securities exchanges. Between January 1971 and May 24, 1973, defendant was Weis' independent certified public accountant. The complaint alleges that, in this capacity, Touche Ross certified three financial statements that were materially false and misleading, and also prepared a false Form X–17A–5 which was filed with the SEC.

■ Two of these statements, those dated as of November 24, 1972 and February 23, 1973, were not audited by Touche Ross and are plainly marked "Unaudited." As to these financial statements, there can be no reliance upon misrepresentations by these defendant accountants. We therefore find that the allegations relating to the unaudited financials fail to state a claim.

Plaintiffs' first amended complaint was dismissed without prejudice for failure to comply with Rule 9(b), F.R.Civ.P. This Court believes that the second amended complaint has cured this defect. The specific misrepresentations and omissions in the audited May 26, 1972 annual report and Form X–17A–5 may be characterized generally, for purposes of this Memorandum, as understating Weis' liabilities and inflating its assets.

*The § 10(b) Claims*

An alleged fraud under § 10(b) and Rule 10b–5 must be "in connection with the purchase or sale of any security." See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). At issue here is whether the allegedly fraudulent misrepresentations and omissions were so proximately related either to a purchase or a sale, as to be actionable as "in connection with" such a transaction.

The complaint alleges that the trustee plaintiffs, in reliance upon defendant's certified financial statements, made four purchases through Weis, as broker. It is not alleged, nor could it be, that the misrepresentations or omissions caused the plaintiffs to enter into these particular purchase transactions or purchase these particular securities.[1] Moreover, no claim is made that the loss incurred by these plaintiffs was caused by the decision to invest in any particular issue. See *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir.

---

1. Plaintiff trustees purchased through Weis: 800 shares of Uniroyal, Inc. on November 27, 1972; 700 shares of Guardian Industries Corp. on March 6, 1973; 300 shares of Libby-Owens-Ford Co. on April 10, 1973; and an additional 1,000 shares of Guardian Industries Corp. on April 17, 1973. When the SIPC trustee liquidated the customers' accounts of Weis, the plaintiff trustees received cash in lieu of a portion of their securities in each of these issuers. It is not alleged that Shurpin, a margin account customer, effected any purchases through Weis.

1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

▮ Under the circumstances of this case, the purchase transaction was complete when Weis acquired possession of the securities issued in the name of the purchaser, or when Weis sent its customer confirmation of the purchase and identified the street name security on its books and records as belonging to its customer. See New York Uniform Commercial Code §§ 8–313(1)(b), (c). Thereafter, when the plaintiff trustees, as cash account customers, allowed their shares to remain in the possession of Weis, they made a separate decision quite apart from the investment decision to purchase the shares. This decision was to permit Weis to act as custodian or bailee of these securities.[2] No loss resulted from the decisions to make the purchases, but rather, the damage flowed from the decision to place or leave the stock certificates in Weis' cage. See *Rich v. New York Stock Exchange*, 379 F.Supp. 1122 (S.D.N.Y.1974), *rev'd on other grounds*, 522 F.2d 153 (2d Cir. 1975).

Viewed most favorably to the plaintiffs, they entered into this bailment in reliance upon the solvency of Weis as certified by these accountants. The alleged misrepresentations and omissions were not made in connection with any purchase of securities, but rather, in connection with a bailment.

Plaintiffs contend that they were "forced sellers" of their securities and that the fraud occurred in connection with this forced sale. The Securities Investor Protection Act ["SIPA"], 15 U.S.C. §§ 78aaa, *et seq.*, authorizes a SIPC trustee to distribute to customers, *pro rata* to the extent available, securities which he finds in the possession of the defunct brokerage firm, and to satisfy the remainder of the claims in cash within the statutory limit. The complaint alleges that the plaintiffs had securities sold for them when, pursuant to Court authorization under SIPA, they received cash in lieu of a portion of the securities which they owned.

▮ Defendants contend that this liquidation does not qualify as a "sale" for purposes of Rule 10b–5. Defendants rely upon *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154 (S.D.N.Y.1974), where the Court held that a bankruptcy liquidation of the issuer was not a "sale" for purposes of Rule 10b–5. This analogy is inapposite. In SIPC liquidation, as in a sale, a security holder's investment is reduced to its market price cash equivalent. The case varies from a bankruptcy liquidation in that the conversion from securities to cash does not occur as to all holders of a particular class of securities of the issuer. In SIPC liquidation, securities of various issuers are returned to the extent they are available; missing securities, as to which there is a shortage, are deemed reduced to their cash equivalent as of the close of business on the SIPA filing date, and claims are paid from SIPC's insurance fund or the general assets of the defunct stockbroker. For reasons not within the control of the investor, a portion of his shares are converted to cash. However, if the customer's claim for securities of a particular issuer can be fully satisfied in kind, the customer is not forced to accept cash. Holders of securities of the same issuer whose certificates were not with Weis retained their investment intact. A SIPC liquidation of customers' accounts

---

2. Under New York law, a bailment has been defined as

"[a] delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it." *Mays v. New York, N.H. & H.R.R.*, 197 Misc. 1062, 97 N.Y.S.2d 909, 911 (1st Dept., App.T.1950). See also *Hogan v. O'Brien*, 123 Misc. 865, 206 N.Y.S. 831 (Sup.Ct., Rensselaer County 1924), *aff'd*, 212 App.Div. 193, 208 N.Y.S. 477 (3d Dept. 1925).

A bailment "describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from what the law regards as a fair approximation of their [intentions]." *Ellish v. Airport Parking Co.*, 42 App.Div.2d 174, 345 N.Y.S.2d 650 (2d Dept. 1973), *aff'd on opinion below*, 34 N.Y.2d 882, 359 N.Y.S.2d 280, 316 N.E.2d 715 (1974).

more nearly resembles a sale transaction than a bankruptcy liquidation of the issuer. We hold that the SIPC liquidation qualifies as a sale of securities, where and to the extent customers' claims to specific shares are satisfied in cash due to shortage. *Vine v. Beneficial Finance Company*, 374 F.2d 627, 634–35 (2d Cir.), *cert. denied* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

■ There remains the issue whether there exists the requisite nexus between the alleged fraud and such a sale, so as to be actionable under Rule 10b–5. To satisfy the "in connection with" requirement, the injury caused to plaintiff must have been "a result of deceptive practices touching its sale of securities as an investor." *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). To satisfy the requirement, "the alleged fraud must be intrinsic to the securities transaction itself." *In re R. Hoe & Co.*, [1973–74] CCH Fed.Sec. L.Rep., ¶ 94,552 at 95,923 (S.D.N.Y.1974). See also, *Bolger v. Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260, 267 (S.D.N.Y.1974).

In *Competitive Associates, Inc. v. Laventhol, Krekstein, Horwath & Horwath*, 516 F.2d 811 (2d Cir. 1975), relied upon by plaintiffs, the Court held that a Rule 10b–5 claim was stated against accountants who certified financial statements of a private investment fund which were false and misleading, and on which plaintiff relied in selecting the same investment adviser [Akiyoshi Yamada] to manage a portion of its portfolio. The Court found that the plaintiff alleged a fraudulent scheme, in which the defendant accountants actively collaborated, "the accomplishment of which [was] directly related to the trading process." 516 F.2d at 815. There, the plaintiffs, in reliance upon the fraudulent financial statements, selected the investment adviser who caused the plaintiff to enter into fraudulent securities transactions which caused its losses. In *Competitive Associates*, the fraud had as its very object the purchase and sale of securities. The

causal relationship between the fraud and the securities transactions was clear.

In the instant case, Touche Ross certified Weis' financial statements for the fiscal year ended May 26, 1972. Plaintiffs allege that the accountants fraudulently misstated the financial condition of that brokerage firm as of that date. As a result of this fraud, plaintiffs decided to retain their securities in the custody of Weis. In May 1973, when the fraud was discovered, a SIPC trustee was appointed and in the course of liquidation, their holdings were reduced to cash, effecting an involuntary conversion in the nature of a sale. It was not an object of the alleged fraud to cause plaintiffs to sell their shares. Indeed, assuming Touche Ross to have been an active participant, the fraud could only be effective if the true financial condition of Weis went undiscovered and the brokerage firm continued to operate. See *Ingenito v. Bermec Corporation, supra*, at 1177.

■ Ordinarily, the mere retention of securities will not satisfy the "in connection with" requirement. See, *e.g., Greenstein v. Paul*, 400 F.2d 580 (2d Cir. 1968); *Pollak v. Eastman Dillon*, [1974–75] CCH Fed.Sec.L. Rep. ¶ 94,987 (S.D.N.Y.1975); *Molasky v. Garfinkle*, 380 F.Supp. 549 (S.D.N.Y.1974). *Blue Chip Stamps v. Manor Drug Stores, supra*, strengthens this conclusion. Furthermore, a deferred sale will not satisfy the "in connection with" requirement where the sale was not a part of the overall scheme to defraud. See *Bolger v. Laventhol, Krekstein, Horwath & Horwath, supra; In re R. Hoe & Co., supra.*

Plaintiffs rely upon a narrow exception that has been recognized to permit a 10b–5 suit predicated on a deferred sale. The exception created by cases such as *Stockwell v. Reynolds & Co.*, 252 F.Supp. 215 (S.D.N.Y.1965) and *Travis v. Anthes Imperial Limited*, 473 F.2d 515 (8th Cir. 1973) has been narrowly construed and limited to those situations where the plaintiffs signify to the defendant their present intention to sell their shares and are specifically induced thereafter by a fraudulent scheme to retain their shares. See *Bolger, supra*, at 266; *In*

re R. Hoe & Co., supra. Under the circumstances of this case, any misstatements about Weis' financial condition could not have been material to the decision to sell these shares at an earlier date, although it would have influenced the decision to terminate Weis' bailment.

■ Since we find that the alleged fraud was not "in connection with the purchase or sale of any security," but rather in connection with a bailment of plaintiffs' securities, neither the first or second claims pleaded state a claim under Rule 10b–5.

The second amended complaint fails to state a claim under Rule 10b–5 for yet another reason. The complaint alleges that Touche Ross "*knew or should have known* that Weis' financial condition was not what it was represented to be in the financial statements [it] certified" (¶ 32 of the Second Amended Complaint) (emphasis added), and that Touche Ross aided and abetted Weis to violate the antifraud provisions of the 1934 Act (¶ 47).

■ It is the settled law "that 'facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud' are essential to the imposition of liability." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1301 (2d Cir. 1973) (en banc). Mere negligence is not actionable under § 10(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976). See also *Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540 (2d Cir. 1973), *cert. denied* 415 U.S. 918, 94 S.Ct. 1416, 39 L.Ed.2d 472 (1974); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 445 (2d Cir. 1971).

■ The second amended complaint, alleging that Touche Ross "knew or should have known" Weis' true financial condition, and that it aided and abetted Weis in violating Rule 10b–5, fails to plead scienter as required for a 10b–5 action. *Vogel v. Brown*, [1974–75] CCH Fed.Sec.L.Rep. ¶ 94,-831 (S.D.N.Y.1974) (Wyatt, J.). See also, *Katz v. Realty Equities Corp.*, [Current] 406 F.Supp. 802, CCH Fed.Sec.L.Rep. ¶ 95,452 (S.D.N.Y.1976) (Pollack, J.). But see *contra, Lewis v. Marine Midland Grace Trust Co.*, 63 F.R.D. 39 (S.D.N.Y.1973) (Palmieri, J.) and *Oleck v. Fischer*, [Current] 401 F.Supp. 651, CCH Fed.Sec.L.Rep. ¶ 95,332 (S.D.N.Y.1975) (Lasker, J.).

Since this third complaint may be read as pleading one state of facts [scienter] under which a 10b–5 claim could be stated and another [negligence] which fails to state a claim, we would be loathe to dismiss it without leave to amend, on this ground alone. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also *Voege v. Ackerman*, 364 F.Supp. 72 (S.D.N.Y.1973). In assessing this pleading, however, it is of more than passing interest that several of Weis' principals were convicted in this Court (*United States v. Levine, et al.*, 73 Cr. 693–RLC) of a conspiracy to falsify Weis' books of account, and that one of the means alleged (Count One, ¶ 6(d) of Indictment) was that:

"The defendants Levine, Leit, Kubie and Lynn would and did fraudulently conceal from Weis' auditors, Touche Ross & Co., the existence and nature of the aforesaid fraudulent books and records [of Weis] and, in addition, would and did create directly and indirectly wholly fictitious documentation for the aforesaid fraudulent entries."

Against this factual background, it is not unreasonable to require plaintiffs to allege scienter, a necessary element of 10b–5 fraud, on the part of the defendant accountants, if that is their allegation.

Since there are other grounds which require dismissal, we do not rely on the failure to plead scienter.

## The § 18(a) Claim

The second amended complaint alleges that, in addition to the financial statements certified by Touche Ross, the defendant prepared the financial information contained in Form X–17A–5 filed by Weis with the SEC. Although not alleged in the complaint, plaintiffs also argue that this same information was filed with the New York Stock Exchange pursuant to its Rule 417.

See SEC Rule 17a–5(c)(1), 17 C.F.R. § 240.-17a–5(c)(1).

The complaint alleges that, in preparing these statements, the defendant failed to follow generally accepted accounting principles and standards, and that had these standards been followed, Weis' true financial condition would have been discovered.[3] Plaintiffs allege further that officers and employees of Weis knew that Weis was in violation of the NYSE's net capital rule, Rule 325. One of the major functions of NYSE audits is to determine compliance with Rule 325. See CCH NYSE Guide ¶ 2417.10(8).

Section 18(a), 15 U.S.C. § 78r(a), provides in pertinent part:

"Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder . . ., which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading."

■ Section 18 applies to documents filed with the SEC pursuant to its rules under the 1934 Act and to documents filed with a national securities exchange. *Fischman v. Raytheon Manufacturing Company*, 188 F.2d 783 (2d Cir. 1951).

3. Form X–17A–5, 17 C.F.R. § 249.617, as effective in 1972, contained the following instructions regarding audit procedures:

"The audit shall be in accordance with generally accepted accounting standards and shall include a review of the accounting system, the internal accounting control and procedures for safeguarding securities including appropriate tests thereof for the period since the prior examination date. It shall include all procedures necessary under the circumstances to substantiate the assets and liabili-

■ Defendants contend that no claim is stated under § 18(a) because plaintiffs did not rely upon the document filed. "Reliance on the actual [filed document] is an essential prerequisite for a Section 18 action and constructive reliance is not sufficient." *Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968), *cert. denied* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). See also *Borotz v. Monarch General, Inc.*, [1974–75] CCH Fed.Sec.L.Rep. ¶ 94,933 (S.D.N.Y. 1975).

In support of its contention that plaintiffs did not actually rely on the May 26, 1972 financial statements as rendered in Form X–17A–5, defendant relies upon excerpts from the deposition of plaintiff trustee Schiff taken in connection with the related case of *Rich v. New York Stock Exchange, supra*, which remains undetermined in this Court. Plaintiffs controvert defendant's conclusion that they did not rely upon the financial statement and have submitted the affidavits of plaintiffs Rich and Shurpin who also quote from their own depositions in the other *Rich* case.

■ The affidavits and deposition material submitted here raise matters outside the scope of the pleadings. Pursuant to Rule 12(c), F.R.Civ.P., we would treat this motion as a motion for summary judgment and deny the motion since there is a dispute as to material issues of fact. See *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975); *Fischer v. Kletz*, 266 F.Supp. 180, 189 (S.D.N.Y.1967).

This brings us to a consideration of whether plaintiffs can state a § 18(a) claim.

■ Section 18(a) is to be construed according to its terms and its "coverage . .

ties and securities and commodities positions as of the date of the responses to the financial questionnaire and to permit the expression of an opinion by the independent public accountant as to the financial condition of the respondent [broker-dealer firm] at that date." SEC Release No. 34–8172, 32 F.R. 14018, 14022.

Since 1972, Form X–17A–5 and its instructions have been amended. 3 CCH Fed.Sec.L.Rep. ¶ 33,921.

is no broader than that indicated by the plain meaning of its language." *Hoover v. Allen*, 241·F.Supp. 213, 221 (S.D.N.Y.1965). The language of § 18(a) plainly requires that a plaintiff prove that he "purchased or sold a security *at a price which was affected* by such [false or misleading] statement." (Emphasis added).

■ Section 18(a) is similar in language to § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e). Section 9(e) reads in relevant part:

"Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall *purchase or sell any security at a price which was affected by such act or transaction*, and the person so injured may sue . . . to recover the damages sustained as a result of any such act or transaction." (Emphasis added).

Both sections expressly create a private remedy, but only in favor of a person who purchased or sold a security "at a price which was affected by" the prohibited conduct.

We have found no reported decisions construing this language as it appears in § 18(a), for in the more common claims contemplated by this section, false current reports (Form 8–K) or annual reports (Form 10–K) *of the issuer*, will generally affect the market price of a security. Courts which have construed the parallel language as it appears in § 9(e) have held that it states a requirement that the offending conduct must have affected the purchase or sale price of the security. See, *e.g., Rosenberg v. Hano*, 121 F.2d 818 (3d Cir. 1941); *Jewelcor Incorporated v. Pearlman*, 397 F.Supp. 221, 244–45 (S.D.N.Y. 1975); *du Pont v. Wyly*, 61 F.R.D. 615 (D.Del.1973). A similar conclusion is warranted under § 18(a).

■ Sections 18(a) and 9(e) contain a strict "double-barreled" causation requirement. See *Britten v. Schweickart*, [1956–61] CCH Fed.Sec.L.Rep. ¶ 91,029 (S.D.N.Y. 1961); 3 Loss, Securities Regulation 1748–49 (2d ed. 1961). Under § 18(a), plaintiff must demonstrate: (1) that his damages

were caused by his reliance on the false or misleading statement; and (2) that the purchase or sale *price* was affected by the false or misleading statement. See Note, Civil Liability for Misstatements in Documents Filed under the Securities Act and the Securities Exchange Act, 44 Yale L.J. 456, 461–62 (1935).

Viewed most favorably to plaintiffs, the second amended complaint alleges that their damages were caused by their·reliance on the false Form X–17A–5 filed with the SEC and the NYSE.

We assume, for the·argument, that plaintiffs could satisfy the first causation element: that they entered into a securities transaction, here, an involuntary conversion treated as a sale, in reliance upon the false Form X–17A–5. However, plaintiffs do not satisfy the second causation element. They fail to allege that this false document pertaining as it does, only to Weis, affected the market prices of the securities which were "sold" for them in the SIPC liquidation. Nor could they do so.

Market prices of publicly traded securities may be affected by a panoply of concrete and subtle influences, among them: the corporation's earnings per share, price-earnings ratio, dividend history, competitive market position for its goods or services, book value of its assets, investor confidence in a particular sector of the economy or in the economy generally, or in management capabilities. The misstatements in the Form X–17A–5 might have affected the price of shares of Weis itself, but plainly could not influence the market prices of the shares of the various issuers which plaintiffs held. None of the issuers whose stock was sold had any relationship with Weis.

In 1941, the SEC recommended that § 18(a) be amended and that the phrase "at a price which was affected by such statement" be deleted. 3 Loss, Securities Regulation, 1753 (2d ed. 1961). In seeking this amendment, the SEC left no doubt that this phrase was a substantive limitation on the scope of § 18(a). The interpretation propounded "by an agency charged with the

administration of a statute, while not conclusive, is entitled to substantial weight." *Zeller v. Bogue Electric Manufacturing Corporation,* 476 F.2d 795, 800 (2d Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).

█ To state a claim under § 18(a), the plaintiff must allege that his purchase or sale price was affected by the false or misleading statement. The second amended complaint fails to allege any circumstances under which the fraudulent filing with respect to Weis could have had this effect. Accordingly, the second amended complaint fails to state a claim under § 18(a).

*Pendent State Law Claims*

█ As the Court observed in *Ryan v. J. Walter Thompson Co.,* 453 F.2d 444, 445 (2d Cir. 1971), quoted approvingly in *Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176, 1178 (2d Cir. 1974):

"This case is another example of a trend we have observed with disturbing frequency, namely, invocation of the salutary antifraud provisions of the federal securities laws in cases where those provisions are wholly inappropriate and wide of the Congressional mark. Moreover, the vice of this practice is compounded here by engrafting upon the misplaced federal securities law claim a state law claim that, but for the federal gloss, should have been litigated in the state courts."

In our prior decision addressed to plaintiffs' first amended complaint, 68 F.R.D. 243, 247 (S.D.N.Y.1975), we observed that plaintiffs appear to state a good claim under familiar principles of negligence or accountant's malpractice. See *Ultramares Corporation v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931); *State Street Trust Co. v. Ernst,* 278 N.Y. 104, 15 N.E.2d 416 (1938). Since plaintiffs first brought this suit in 1974, the New York legislature has conferred upon its bar authorization for the maintenance of class action suits under provisions similar to Rule 23, F.R.Civ.P. See New York CPLR, Art. 9 (McKinney's Supp.1975). Plaintiffs may pursue the true gravamen of their grievance, the alleged negligence and malfeasance of these accountants, in their own right in state court litigation, and with the approval of the state court, may sue as representatives of their purported class.

*Conclusion*

Plaintiffs second amended complaint fails to state a claim under either § 10(b) or § 18(a) of the 1934 Act. No purpose will be served in permitting further amendment. Plaintiffs' pendent common law claims are dismissed without prejudice to the litigation of these claims in an appropriate state forum.

So Ordered.