OPINION OF THE COURT
Eugene Berkowitz, J.
When is a winning New York State Lottery Keno ticket, not a winning ticket?
*51 Plaintiff, Lillian Leavy, sues codefendants, Games Management Service (GMS) and Harvey Katz Newstand, for $500 prize money allegedly due on a New York State Lottery Keno Ticket No. 07965 duly purchased and validated at the Harvey Katz Newstand. The ticket contained the winning numbers drawn for the week of August 25, 1979.
GMS alleges that whether or not such facts are true, the said ticket would not be considered a winning ticket unless GMS had in its possession a photocopy of the said ticket as required by Keno rules.
The purchaser of a Keno ticket obtains a three-part blank form. The first part contains printed information, a place for the purchaser’s name and address, a place for the validation imprint, a printed number and eight sections containing smaller squares numbered 1 to 40 in each section. Each section is a separate game which can be played by blocking out four numbered squares. The player pays 50 cents per game and can play up to eight games on one entry. Each Saturday evening the winning numbers are drawn at random on a major television channel. These numbers apply to both the Keno and Lotto games, which are similar to each other. The major difference between the games lies in the amount of money paid to winners based on how many of the players numbers are selected. The second part of the ticket consists of a carbon. The third part, which is the players part, is a carbon copy of part I and contains additional information. Both first and third copies bear the imprint of the validation stamp.
The validation stamp contains the agent’s registration number, a transaction sequence number, and the contest week number being played. The original is kept by the agent to be turned over to a courier for GMS at the end of the week while the player’s copy with the validation imprint is kept by the player.
Upon delivery to GMS, the tickets are photocopied in White Plains after various security procedures have been followed, to assure the integrity of the process. A total of three copies are made. However, two of the copies are made from the first microfilm. One copy is given to the auditors of the State prior to the drawing, a second copy is secured *52 in a bank, and the third copy is retained by GMS. The original ticket is retained by GMS for eight weeks following the drawing and then picked up by the New York State Lottery Commission where it is held for approximately one year. In the instant case, it was admitted that the ticket was purchased and given a validation sequence number and that this ticket and its validation sequence number was missing from the records of GMS. The agent need pay for only those tickets he has turned in, and for which he is billed the following week.
Defendants do not contradict the facts recited by plaintiff. Defendants rely upon the rules contained in 21 NYCRR 2819.2(a)[1]; 21 NYCRR 2819.7(d)[2] ; 21 NYCRR 2819.11 (a)(4)[3]; 21 NYCRR 2819.11 (c)[4] and 21 NYCRR 2819.13 (d)[5] (Keno rules of the NYCRR which in effect state their original defense).
There is no question that when a player submits a filled in ticket and entry fee to a Keno agent the purpose of that transaction is to enter the game. The playing public reasonably relies on the administrator of the game (in this case *53 GMS) to properly process the tickets. The player need not negotiate with the agent as to whether he and the games administrator will faithfully and honestly perform their duties with regard to processing the ticket.
A bailment has been defined as a “ ‘delivery [or deposit] of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions’ ” (Rich v Touche Ross & Co., 415 F Supp 95, 99, n 2).
“A bailment ‘describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from what the law regards as a fair approximation of their [intentions].’ ” (Rich v Touche Ross & Co., supra at p 99, n 2; Ellish v Airport Parking Co. of Amer., 42 AD2d 174, 176.)
In a landmark decision Judge Cardozo in Glanzer v Shepard (233 NY 236) held that where a party contracts to perform a service and a third party acts in reliance upon that service, the party performing the service owes a duty to the relying party (even if the relying party was not the one who contracted for or paid for the service) to properly perform that service.
Accordingly, Leavy’s submission of her tickets and her reliance that they would be properly processed was a consequence which, to the defendants’ knowledge, was the end and aim of their obligation to participate in the administration of the Keno game, and was not an indirect or collateral consequence of the action of defendant. The defendants held themselves out to the public as having the trust of the State to properly administer the Keno game. They advertised for the very purpose of inducing the public to play the game. In such circumstances, assumption of the task of administering the game was the assumption of a duty to administer carefully for the benefit of all whose tickets were to be administered. Given the contract and the relation, the duty is imposed by law. (Glanzer v Shepard, supra, at p 239.)
Here as in Glanzer, diligence was owing (to administer *54 properly), not only to him who contracted (Division of State Lottery), but to him also who relied (Leavy). (Glanzer v Shepard, supra, at p 242; see, also, White v Guarente, 43 NY2d 356; Ultramares Corp. v Touche, 255 NY 170; State of New York v Oxford Nursing Home, 96 Misc 2d 103.)
It is clear therefore that what is here involved is a contract of bailment.
In Mack v Davidson (55 AD2d 1027) the Fourth Department dealt with a bailment created without a contract. An implied bailment arises when one comes into lawful possession of personal property of another, other than by mutual contract of bailment; such person may be treated as a bailee of such property by operation of law and may reasonably be referred to as a constructive bailee.
Where a bailment exists the mere fact that the bailed article becomes lost will not make the bailee liable to the bailor. It is well settled that a bailee is not an insurer. (Hogan v O’Brien, 212 App Div 193; National Dairy Prods. Corp. v Lawrence Amer. Field Warehousing Corp., 22 AD2d 420.) The bailee is liable to the bailor for a loss of the thing bailed in an action for negligence or conversion. In such an action the burden of establishing conversion or negligence rests upon the bailor. However, upon giving proof of the bailment and the failure to redeliver, a presumption arises that the bailee has converted the item bailed or negligently caused its loss. This presumption operates to cast upon the bailee the burden of producing proof in explanation of the loss. In default of such proof, the bailor is entitled as a matter of law, to a verdict in his favor. (Hogan v O’Brien, supra, at p 194; Weinberg v D-M Rest. Corp., 60 AD2d 550; Springfield Elec. Specialties Co. v Exhibit Techniques, 56 AD2d 597; Ellish v Airport Parking Co. of Amer., 42 AD2d 174, supra; National Dairy Prods. Corp. v Lawrence Amer. Field Warehousing Corp., supra.)
In the case at bar, the testimony is uncontroverted that Leavy delivered her Keno ticket to Katz, who in turn alleges he delivered it to GMS for processing. Leavy was not awarded her prize because GMS was unable to locate either *55 her original ticket or a microfilm copy. Thus, Leavy has shifted the burden to defendants to explain what happened to Leavy’s ticket.
Although defendants gave extensive testimony as to the general procedures employed in administering the Keno game there was no testimony offered as to what happened to Leavy’s ticket. As in Town of Fairfax v New York Cent. & Hudson Riv. R. R. Co. (67 NY 11, 14), when plaintiff demanded the article (the prize due on the winning ticket), it had disappeared and no account given of the cause of such disappearance. This is prima facie evidence of negligence.
In a case decided recently by the Court of Appeals I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 658), the court restated the long-standing rule that a prima facie case of negligence is made out when the bailee does not come forward with an explanation of the loss of the item. The Court of Appeals has now decided that this failure to account for the loss will support a summary judgment of conversion.
In the I.C.C. case there was a 50-dollar limitation of liability for the lost bailment. However, the court held that the limitation of liability would not apply in matters concerned with conversion.
The court stated that the bailee, being in the best position to explain the loss should be under a duty to do so. The court refused to allow the bailee “to avoid liability by simply pleading ignorance of the fate of the stored merchandise. To allow the warehouse to so easily escape its responsibilities would be to place the bailor in an untenable position and would serve to encourage both dishonesty and carelessness.” (I.C.C. Metals v Municipal Warehouse Co., supra, p 665.)
The court further stated (supra, p 667): “The possibility of fraud is obvious, for a dishonest warehouseman might well be encouraged to convert bailed property if he could then obtain the benefit of a contractual limitation of liability by the simple expedient of professing ignorance as to the fate of the goods.”
*56 Obviously the same principles apply to the case at bar and the limitations relied upon by the defendants would not apply.
In defending this action, defendants’ rely almost exclusively upon the regulations promulgated by the Division of the State Lottery. Defendants assert that 21 NYCRR 2819.9 limits its liability to an aggrieved player. Section 2819.9 provides: “In the event a dispute between the Lottery and/or the contractor and the player occurs as to whether a ticket is a winning ticket, and if the ticket prize is not paid, the director may, if he considers there is any doubt, replace the entry cost of the games marked by the player on that ticket. This shall be the sole and exclusive remedy of the player of the ticket.”
This court recognizes the well-settled New York rule that the Legislature may, by statutory authority, confer upon an agency the power to adopt rules and regulations reasonably adapted to carry out the purposes or objects for which it was created and reasonable rules when duly adopted pursuant to such authority have the force and effect of law. (Wickham v Levine, 47 Misc 2d 1, 3.)
The Court of Appeals has said that an administrative regulation which is legislative in nature will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious. (Grossman v Baumgartner, 17 NY2d 345, 349.)
The legislative intent in creating the Lottery was to raise revenue for the State, for the benefit of the people of the State. The Division of the State Lottery was established in order to arrange for the administration of the lottery. The Division of the State Lottery (DSL) promulgated its regulations with the intent of carrying out the wishes of the Legislature. The Legislature mandated that DSL develop a security system in order to protect the public by preventing fraud and dishonesty and to conduct its security precautions in a manner that would invite public confidence, rather than to perpetuate a system that rewards ineptitude, carelessness and possibly outright fraud.
Defendants insist that the inflexible requirement of a microfilm copy of a winning ticket and a blanket limita *57 tian on liability must be applied in all cases and only then will the lottery be secure. This court does not agree. In fact, this court believes that in the instant case, to allow a disclaimer of plaintiffs winning ticket would serve to controvert the legislative intent by encouraging fraud and misfeasance and would be condoning an act of the utmost unconscionability.
There has been no credible evidence presented at any time during this proceeding to indicate any fraud on the part of Mrs. Leavy. After considering the evidence and arguments presented in this case, the court believes that the most likely opportunity for fraud is after validation of a player’s ticket. Under the present system, there is no provision to prevent the sales agent from skimming the sales price of several tickets into his own pocket as the agent is not presently held accountable for missing tickets by GMS.
GMS because of a limitation on liability has no incentive to develop a more secure system to account for validated tickets. Assuming that there has been no fraud involved, GMS has no incentive to exercise the utmost care in administering the game as long as GMS believes that it is exempt from serious liability. A possible alternate approach would be to cause a validated ticket to automatically fall into a sealed box which can only be opened in the home office.
The New York State Lottery is only a few years old and consequently not many cases of this nature have reached the courts. Defendants in their briefs have cited cases where bettors were unable to recover for winning lottery or pari-mutual tickets. Those cases are not on point. In the cited cases, the players failed to perform some affirmative act such as the timely production of a ticket which was in the players possession. (See Matter of Caplan v New York State Dept. of Taxation & Fin., Div. of Lottery, 32 NY2d 134; Karafa v New Jersey State Lottery Comm., 129 NJ Super 499.)
Mrs. Leavy did all she was required to do, to play the game. It was the defendants who had exclusive control of *58 the ticket and only the defendants were in a position to produce the ticket.
The present situation might be considered analogous to the facts in the case of Mills v Roosevelt Raceway (66 Misc 2d 251). Here Mills, the holder of a winning pari-mutual ticket presented the ticket to a track employee for the purpose of reporting winning tickets to Internal Revenue. Apparently, the employee returned a different ticket to Mills. When Mills tried to collect his money at the payoff window, the track refused to pay claiming that without presentment of a winning ticket, the regulations of the State Harness Racing Commission prevented payment. The Appellate Term held that where the tortious interference of defendant prevented the presentment of a winning ticket, full performance was excused and the player would recover his winnings despite the pari-mutual regulations.
The testimony indicated that defendant Katz was the operator of the newstand at the time of the purchase of the ticket in question. Defendant Katz has failed to carry the burden of the affirmative defense that he was not the owner at that time, and this court finds that he' held himself out as the operator of the newstand.
There was no allegation that plaintiff was a party to a fraudulent claim or that the plaintiff did not purchase a ticket containing the numbers which proved to be the winning numbers after the drawing.
The defendants have failed to rebut any presumption of liability. It would be a miscarriage of justice to permit the defendants to take advantage of their own neglect and would shock the conscience of the court to countenance such a result.
This court finds that there is no evidence to conclude that Leavy participated in any fraud.
The defendant’s failure to produce the ticket on proper demand suffices to establish a prima facie case of conversion and thereby renders inapplicable the liability limiting provision. The defendant’s have failed to come forward with sufficient evidence to prove that its failure to return the property is not the result of its conversion of that prop *59 erty to its own use. Under the circumstances of this case, to disallow Leavy from claiming her price because of the malfeasance of the defendants would be completely unconscionable.
Accordingly, this court awards judgment to plaintiff in the amount of $500 plus interest and costs of this action against both defendants.-

. “By submitting a Keno ticket for validation, the player agrees to abide by the rules and regulations pertaining to Keno, as determined by the director of the New York State Lottery. The player also acknowledges that any such ticket will not be considered a valid entry until such time as an image of the ticket is recorded on microfilm at Lotto Central.

. “Only the microfilm of the ticket in the possession of the Lottery will be considered in determining any claim.”

. “To be a valid ticket for Keno, all the following requirements must be met: * * * The top part of the ticket submitted through a Lotto sales agent must be received by Lotto Central and be microfilmed before the drawing for a particular weekly game. Any ticket submitted by mail in accordance with subdivision (f) of section 2819.12 of this Part will be eligible for the next weekly game for which it can be microfilmed prior to the time of a particular weekly drawing. Any ticket which is not on a particular weekly game’s microfilm will be an invalid ticket for that particular weekly game.”

. “Receipt at Lotto Central and/or a Lotto sales agent of entry fee will not be accepted as proof that a ticket was, in fact, received at Lotto Central. The only acceptable proof of a receipt of a ticket for consideration is that the ticket image appears on microfilm for the particular weekly game.”

. “Neither the contractor nor the State Lottery shall be liable to any player for any neglect, omission or failure on the part of any Lotto sales agent to forward a ticket to Lotto Central in accordance with [these rules and regulations] or to properly validate the same. The only acceptable proof of entry for a ticket is that the ticket’s image appears on microfilm for the particular weekly game.”