OPINION OF THE COURT
Sidney Leviss, J.
Plaintiff maintains that she holds the $250,000 winning Lotto ticket for the week of August 30, 1980. Plaintiff claims that her son purchased the ticket in question on her behalf while employed at a stationery store. It is asserted that, after filling in his game choices, he presented the ticket to his employer who took the required payment and told plaintiff’s son to validate the ticket himself. On validating the ticket, plaintiff’s son allegedly placed the original portion of the ticket in a receptacle maintained for that purpose and kept the player’s copy. On learning that her son had correctly picked the winning numbers, plaintiff visited the stationery store and was informed by its principal that, although plaintiff’s copy of the ticket correctly noted the winning numbers, the ticket could not be consid *971 ered a winner since the original had not been microfilmed at Lotto Central in accordance with the Lotto rules and regulations.
This action to recover damages based on negligence, fraud and breach of contract and to declare the microfilm rules unconstitutional was commenced by plaintiff against defendant J & J Stationery, Inc., an authorized Lotto sales agent who sold plaintiff’s son the allegedly winning ticket, and defendant Games Management Services (hereinafter GMS), the manager of the Lotto game pursuant to a contract with the New York State Division of the Lottery (hereinafter NYSDL). Defendant NYSDL, by order dated February 26, 1981, was granted leave to intervene in the action to defend the validity and constitutionality of the rules and regulations promulgated by it concerning the operation of the Lotto game.
Defendant GMS moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it. By separate notice of motion, defendant-intervenor NYSDL also moves for summary judgment on plaintiff’s fourth cause of action for declaratory relief and seeks a declaration that the Lotto rules and regulations challenged herein are valid and constitutional.
Article 34 of the Tax Law establishes a Division of the Lottery in the New York State Department of Taxation and Finance, whose purpose is to operate and administer a lottery, the net proceeds of which are to be applied to the education of children in the State of New York. (Tax Law, §§ 1600-1604.) The NYSDL is specifically authorized to promulgate rules and regulations governing the establishment and operation of a lottery, including the development of an internal security plan. (Tax Law, § 1604, subd [a], par 10.)
Pursuant to this grant of authority, defendant NYSDL created the Lotto game which is managed by defendant GMS. Lotto is based on the random selection of a combination of six one- or two-digit numbers from a greater available quantity. The player selects 6 numbers from 40 for each game desired to be played and marks the selected numbers on a three-part ticket purchased through an *972 authorized sales agent. The agent, after receiving the player’s bet and game selections, imprints the ticket with a validation stamp. The top or original of the ticket is kept by the sales agent and then turned over to defendant QMS at a central station (Lotto Central) where all bets are collected and microfilmed. The second part of the ticket is a carbon, and the third portion is retained by the player.
In order to secure the integrity of the system and protect against fraudulent claims, defendant NYSDL has made it a condition of play that no bet is valid unless received and recorded on microfilm at Lotto Central prior to the weekly drawing of the winning numbers. Microfilming of the original portion of the ticket eliminates the possibility that a player could alter his or her copy of the ticket after the winning numbers were drawn and make a claim for a prize. The pertinent rules attacked by plaintiff as codified in 21 NYCRR 2817.1 to 2817.17, provide:
(1) “By submitting a Lotto ticket for validation, the player agrees to abide by the rules and regulations pertaining to Lotto *** The player also acknowledges that any such ticket will not be considered a valid entry until such time as an image of the ticket is recorded on microfilm at Lotto Central.” (21 NYCRR 2817.2 [a].)
(2) “Only the microfilm of the ticket in the possession of the Lottery will be considered in determining any claim.” (21 NYCRR 2817.9 [n].)
(3) “Neither the State Lottery nor the contractor shall be responsible for lost or stolen Lotto tickets.” (21 NYCRR 2817.10 [b].)
(4) “In the event a dispute between the Lottery and/or the contractor and the player occurs as to whether a ticket is a winning ticket, and if the ticket prize is not paid, the director may if he considers there is any doubt, replace the entry cost of the games marked by the player on that ticket. This shall be the sole and exclusive remedy of the player of the ticket.” (21 NYCRR 2817.11.)
(5) “Receipt by Lotto Central and/or a Lotto sales agent of any entry fee will not be accepted as proof that a ticket was, in fact, received at Lotto Central. The only acceptable proof of receipt of a ticket for consideration is that the *973 ticket image appears on microfilm for the particular weekly game.” (21 NYCRR 2817.13 [c].)
(6) “The ticket must *** be microfilmed before the winning numbers are determined *** A ticket received by Lotto Central which, for any reason whatsoever, is not microfilmed before the winning numbers of a particular weekly game are determined will be deemed to be a ticket submitted for inclusion in the next scheduled weekly game”. (21 NYCRR 2817.14 [c], [d].)
(7) “Any delays, however, caused shall be at the risk of the player and neither the contractor nor the State Lottery shall be liable or responsible for same *** Neither the contractor nor the State Lottery shall be liable to any player for any neglect, omission or failure on the part of any Lotto sales agent to forward a ticket to Lotto Central in accordance with this Part or to properly validate the same. The only acceptable proof of entry for a ticket is that the ticket’s image appears on microfilm for the particular weekly game.” (21 NYCRR 2817.15 [a], [d].)
The Lotto rules are specifically referred to and condensed in pertinent part on every Lotto ticket. The microfilm requirement is printed in red ink directly above the space on the top portion of the ticket where a player must write in his or her name and address. The player’s agreement to abide by the Lotto rules and the availability of those rules are prominently printed on the player’s copy of the ticket.
The Lotto game is an exception to the general prohibition against gambling contained in section 9 of article I of the New York Constitution. The rules and regulations governing permissible forms of gambling have traditionally been strictly enforced. (See Matter of Caplan v New York State Dept. of Taxation & Fin., 32 NY2d 134; Mc Bride v New York City Off-Track Betting Corp., 66 AD2d 770; Carr v State of New York, 15 AD2d 709; Ronca v New York State Racing & Wagering Bd., 90 Misc 2d 324.) Since, concededly, plaintiff’s ticket had not been microfilmed at Lotto Central prior to the drawing in question, no proper claim could be made for the prize money based on the regulations themselves. Sufficient notice of these regulations, moreover, was given plaintiff on the purchase of the *974 Lotto ticket in question. (Matter of Caplan v New York State Dept. of Taxation & Fin., supra; Ronca v New York State Racing & Wagering Bd., supra.)
Plaintiff argues that the microfilm requirement deprives her of nonprocedural due process of law. It is alleged that the requirement is not rationally related to its ostensible purpose of assuring the security and integrity of the Lotto game in light of existing technology which would permit a bettor to directly register his or her bets on a computer terminal. Plaintiff also contends that the microfilm rule and the designation of the Lotto sales agent as the player’s agent unreasonably and unconscionably allocates the risk of loss or negligence on tl^e Lotto player, the party least able to assure that a ticket will be forwarded to Lotto Central and microfilmed.
Article 34 of the Tax Law conferred on defendant NYSDL the power to adopt rules and regulations to accomplish and advance the purposes for which the legislation was enacted — the creation of a Lottery to provide revenue for education. The regulations adopted by defendant NYSDL have the full force and effect of law (Mc Bride v New York City Off-Track Betting Corp., supra) and carry a strong presumption of constitutionality (Finger Lake Racing Assn. v Off-Track Pari-Mutuel Betting Comm., 65 Misc 2d 946). In determining the validity of the regulations in question, the court’s inquiry is limited to ascertaining whether or not the regulations have a rational basis. (Matter of Bernstein v Toia, 43 NY2d 437; Grossman v Baumgartner, 17 NY2d 345.)
As the Court of Appeals stated in Ostrer v Schenck (41 NY2d 782, 786): “The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation ‘is so lacking in reason for its promulgation that it is essentially arbitrary.’ (Matter of Marburg v Cole, 286 NY 202, 212.) The interpretation given a statute by the administering agency ‘if not irrational or unreasonable, should be upheld.’ (Matter of Howard v Wyman, 28 NY2d 434, 438.) As was observed in Mississippi Val. Barge Co. v United States (292 US 282, 286-287), ‘[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative *975 body.’ ” Similarly, where a regulation is challenged on nonprocedural grounds as violating due process, the question is whether there is some reasonable connection between the statute or regulation and a legitimate State objective. (Health Ins. Assn. of Amer. v Harnett, 44 NY2d 302.)
Like lotteries'" operating in other jurisdictions “[t]he State Lottery Law is in no sense remedial legislation designed to cure or correct a specific social ill. On the contrary, while the State Lottery Law was designed to provide a recreational outlet for those so inclined, its main purpose is to provide revenue for state institutions and for state aid to education.” (Karafa v New Jersey State Lottery Comm., 129 NJ Super 499, 504.) The challenged microfilm regulations are clearly a reasonable exercise of the power of defendant NYSDL to formulate an internal security plan for the lottery. (Tax Law, § 1604, subd [a], par 10.) Since these regulations are rationally related to the purpose of the legislation, they are not violative of the due process guarantees of the United States and New York State Constitutions. (See Urowsky v Board of Regents, 38 NY2d 364.) That better or different means could have been found in establishing an internal security plan does not mandate a different conclusion. (Health Ins. Assn. of Amer. v Harnett, supra, p 312.)
The conclusory allegations of fraud asserted by plaintiff are legally insufficient to state a cause of action. Plaintiff has failed to meet the minimal pleading rules of CPLR 3013 which require that “[statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.” In a cause of action based on fraud, CPLR 3016 (subd [b]) requires, in addition, that “the circumstances constituting the wrong shall be stated in detail.” (Gill v Caribbean Home Remodeling Co., 73 AD2d 609; Biggar v Buteau, 51 AD2d 601.)
Insofar as plaintiff seeks recovery against defendant GMS based on theories of negligence, breach of contract and bailment, summary judgment is granted defendant *976 GMS. In viewing the Lotto game as an offer, plaintiff’s purchase of a Lotto ticket constituted an acceptance of that offer, including all of its terms and conditions as disclosed on the face of the ticket. (Cf. Endres v Buffalo Auto. Dealers Assn., 29 Misc 2d 756.) These conditions include a disclaimer of liability and notice that all tickets, in order to be eligible for the weekly drawing, must be on microfilm at Lotto Central. The microfilm rule is printed in block letters on the player’s copy of the Lotto ticket followed by this disclaimer: “Players acknowledge that lotto Sales Agents are acting on behalf of the players in validating the lotto tickets and returning them to the Contractor acting for and on behalf of the State Lottery. The liability of the Contractor, the State, and the lotto Sales Agents, is limited to a refund of the amount wagered if a ticket is not accepted by the Contractor on behalf of the State, regardless of whether said liability arises through neglect, omission, failure or otherwise on the part of an Agent or the Contractor.”
A limitation of liability clause will be enforced if the intention to relieve one of the parties of liability for acts of negligence is expressed in clear and understandable language and there exists no special legal relationship between the parties or overriding public interest which would forbid enforcement. (Gross v Sweet, 49 NY2d 102.)
With respect to the first requirement, the wording of the clause at issue “expresses as clearly as language can the intention of the parties to completely insulate defendant from liability *** by reason of defendant’s own negligence, and, in the face of the allegation of the complaint charging merely ordinary negligence, such agreement is valid.” (Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297.) With respect to the second requirement, the relationship between the parties does not warrant judicial protection. (See, e.g., Gross v Sweet, supra, pp 106-107.) Plaintiff, moreover, has not established a claim of unconscionability since, as has been previously stated, adequate notice of both the disclaimer and the Lotto rules appears on every Lotto ticket. (Contra Leavy v Games Mgt. Serv., 105 Misc 2d 50.)
Accordingly, the motion by defendant GMS for summary judgment on the complaint is granted. The motion by *977 defendant-inter venor NYSDL is granted and the court declares that the Lotto rules and regulations challenged by plaintiff are valid and constitutional.