Hans JACOBSON, on behalf of himself, Individually, and representatively on behalf of all other shareholders of the Walter Reade Organization, Inc., similarly situated, Plaintiffs,

v.

PEAT, MARWICK, MITCHELL & CO., a partnership, Sheldon Gunsberg, E. L. Schuman, C. W. Preuster, Albert Floersheimer, T. D. Carroll, C. F. Simonelli, A. D. Emil, W. C. MacMillen, F. A. Augsbury, Jr., Samuel Hoffman, Milton Koffman, Dolly M. Reade and the Walter Reade Organization, Inc., Defendants.

No. 77 Civ. 108 (HFW).

United States District Court, S. D. New York.

Aug. 18, 1977.

**520**

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiffs; Stacy L. Wallach, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Co.; H. Richard Schumacher, Joseph W. Muccia, New York City, of counsel.

Burke, Burke, Daniels, Leighton & Reid, New York City, for Augsbury.

## OPINION

WERKER, District Judge.

In this securities class action arising out of the failure of the Walter Reade Organization, Inc. ("Reade"),[1] defendant Peat, Marwick, Mitchell & Co. ("PMM"), a partnership of certified public accountants which served as the independent auditor for Reade, moves to dismiss the complaint brought against it by Hans Jacobson (the "plaintiff") for failure to allege fraud with the degree of particularity required by Rule 9(b), Fed.R.Civ.P., and for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.[2] PMM's motion is granted herein but plaintiff is given leave to serve within twenty days an amended complaint in accordance with the decision of this court.

## BACKGROUND

The complaint was filed on January 11, 1977. It alleges jurisdiction under section 27 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78a, et seq. (1970), and contains two counts: the first is brought under section 18(a) of the Act, 15 U.S.C. § 78r(a) (1970); the second, under section 10(b) of the Act, 15 U.S.C. § 78j(b) (1970), and the SEC rules and regulations thereunder, including presumably rule 10b–5, 17 C.F.R. 240.10b–5. Plaintiff seeks damages substantially in excess of $1,000,000 on his own behalf and for a class "consisting of all purchasers and sellers of the common stock of [Reade] from 1970 to date but excluding [the named defendants] (¶ 14).[3]

As plaintiff readily concedes, the complaint was drafted "primarily" from infor-

---

1. Among its many activities, Reade operates motion picture theaters, distributes educational and non-theatrical films and engages in the manufacture of cardboard containers and in commercial printing. Over the past few years, the company has sustained substantial losses, and in January of 1977 it filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq.

2. The other defendants are Reade itself and the officers and directors of Reade.

3. Throughout this opinion, paragraph numbers in parentheses refer to the text of the complaint.

mation set forth in note 3 to the Consolidated Financial Statements accompanying the Form 10–K which Reade submitted to the SEC for calendar year 1975. That note reads as follows:

(3) *Unusual Losses and Restatement*

Subsequent to December 31, 1975, overstatements of approximately $1,507,000 were discovered in certain net amounts receivable. Upon investigation, it was determined that the overstatements resulted principally from failure to properly evaluate and/or account for various transactions with film distributors, including [Reade's] film distribution division.

[Reade] has been able to identify $600,-000 of the overstatements as applying to operations of 1971 and prior years, and such amount has been included in the accompanying consolidated financial statements as an adjustment to accumulated deficit as of January 1, 1974. Although [Reade] believes that the remaining amount of the overstatements, $907,-000, resulted from transactions related to periods prior to 1975, it has been unable, principally because of the absence of sufficient related accounting records and other historical data, to determine the periods in which the overstatements occurred. As a result, the $907,000 has been included in the consolidated statement of operations for 1975 under the caption, "operating costs."

Count One of the complaint alleges that for each of the calendar years from 1970 through 1975, Reade filed with the SEC a Form 10–K and other documents required by the Act (¶ 20); that each of these Form 10–Ks "contained a certification of [Reade's] financial statement by [PMM]," including a representation that the financial statement fairly presented the financial position of Reade, as well as the results of its operations and changes in its financial position as of the end of that year (¶ 21); and that each of the Form 10–Ks was false and materially misleading in that it substantially overstated Reade's accounts receivable and therefore its earnings and net worth for the period in question (¶ 22).

Count One further alleges upon information and belief that Reade's Form 10–K for calendar year 1971 overstated Reade's accounts receivable by at least $600,000 and that Reade's Form 10–K for calendar year 1974 overstated Reade's accounts receivable by at least $907,000 (¶ 23). Count One goes on to recite that "defendants either knew that the Form 10–K's filed by [Reade] . . . were materially false and misleading . . . or acted in wanton and reckless disregard of the true facts" (¶ 24); that plaintiff and each member of the class who bought and sold the common stock of Reade during the relevant period "did so in reliance upon the false financial statements, certifications, documents and reports filed with the S.E.C. at the behest of the defendants" (¶ 26); and that Reade's false statements, documents and reports materially affected the prices at which plaintiff and members of the class purchased and sold Reade's common stock. (¶ 29).

Count Two of the complaint alleges, in essence, that the facts giving rise to Count One also led to a violation of section 10(b) of the Act and rule 10b–5 thereunder. With respect to Reade's records of its accounts receivable, it is further alleged upon information and belief that the defendants, in order to conceal the true facts from the SEC, other government agencies and the investing public, either failed to keep or destroyed business records of Reade and concealed their absence during the period from 1970 through the date the complaint was filed. (¶ 36). It is also alleged upon information and belief that PMM's "certifications" of Reade's Form 10–Ks failed to disclose the absence of these business records or the existence of the defendants' scheme (¶ 36). Finally, in Count Two reliance by the plaintiff and members of the putative class is pleaded in the following terms:

Plaintiff and the members of the class effected their purchase [*sic*] and sales of the common stock of [Reade] during the period 1970 to date in the belief and understanding that such purchases and sales were made at valid and legitimate

market prices derived from the free play of legitimate market sources and untainted by false or fraudulent statements and filings of the defendants. (¶ 38).

## DISCUSSION

### A. Rule 9(b)

■ Although Rule 8(a) of the Federal Rules of Civil Procedure requires but a "short and plain statement of the claim showing that the pleader is entitled to relief," in certain categories of cases—such as those involving allegations of fraud—greater particularity is required to sustain a complaint. Rule 9(b), Fed.R.Civ.P.[4] Thus the complaint in an action for securities fraud must identify, *inter alia*, the misrepresentations which were allegedly made,[5] and the manner in which they are considered to be false,[6] and it must set forth facts from which an inference of fraud by a given defendant may be drawn.[7] Moreover an allegation may only be made upon information and belief when it is shown that it concerns matters peculiarly within the knowledge of the adverse party;[8] even then the pleader must set forth a statement of the facts upon which his belief is founded.[9]

When the complaint in the instant action is viewed with these criteria in mind, it is apparent that plaintiff has not set forth enough facts to state a cause of action for damages under the securities laws.

### 1. Count One

■ Count One of the complaint specifically identifies the documents and statements that plaintiff contends were false and indicates, in general, how he and other investors were allegedly misled, but it nevertheless fails to meet the requirements of Rule 9(b) in several significant respects. First, although it is alleged that Reade's 10–K forms overstated Reade's accounts receivable for each of the calendar years from 1970 through 1975, defendants are also entitled to be apprised of the approximate amount of overstatement involved. *See Gross v. Diversified Mortgage Investors*, 431 F.Supp. at 1088 n. 1; *Levy v. First National City Bank*, No. 75–1335, slip. op. at 2 (S.D.N.Y. Aug. 26, 1975). This information has not been provided for calendar years 1970, 1972, 1973 or 1975. An amount is given for calendar years 1971 and 1974, but this, too, is insufficient since it is done upon information and belief without reciting the facts upon which the belief is founded.[10]

4. One purpose of this requirement is of course to protect accountants and other professionals from a barrage of baseless complaints alleging fraud. *See Felton v. Walston and Co.*, 508 F.2d 577, 581 (2d Cir. 1974); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1296 (1969).

5. *Segal v. Gordon*, 467 F.2d at 602; *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246 (S.D.N.Y.1975); *Matheson v. White Weld & Co.*, 53 F.R.D. 450, 452 (S.D.N.Y.1971).

6. *Felton v. Walston and Co.*, 508 F.2d at 581; *Rich v. Touche Ross & Co.*, 68 F.R.D. at 246; *Matheson v. White Weld & Co.*, 53 F.R.D. at 452.

7. *See Shemtob v. Shearson Hammill & Co.*, 448 F.2d 442, 445 (2d Cir. 1971); *O'Neill v. Maytag*, 339 F.2d 764, 768 (2d Cir. 1964). The complaint, therefore, may not rely upon blanket references to acts or omissions by all of the "defendants," for each defendant named in the complaint is entitled to be apprised of the cir-

cumstances surrounding the fraudulent conduct with which he individually stands charged. *See e. g., Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y.1977); *SEC v. Republic National Insurance Co.*, 378 F.Supp. 430, 439 (S.D.N.Y.1974); *Jones v. Stirling*, [1974–75 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,927 at 97,208 (S.D.N.Y.1974).

8. *Segal v. Gordon*, 467 F.2d at 607; 2A Moore's Federal Practice ¶ 9.03 (2d ed. 1975).

9. *Segal v. Gordon*, 467 F.2d at 607; *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Rich v. Touche Ross & Co.*, 68 F.R.D. at 245.

10. Curiously, the complaint also alleges that the Form 10–K for calendar year 1975 materially overstated Reade's receivables even though plaintiff concedes that it was the disclosures made in that very document upon which he bases the allegations of his complaint. It

■ More importantly, plaintiff has not shown why overstatements made by Reade should lead to an inference that PMM, as its auditor, acted with scienter[11] to defraud parties purchasing or selling Reade common stock. Yet as plaintiff himself concedes,[12] without some showing of impropriety, violations of the securities laws may not be inferred from the publication of inaccurate accounting figures alone. *E. g., Schmeidler v. Lazard Freres & Co.*, No. 74–2206, slip. op. at 8–9 (S.D.N.Y. Jan. 6, 1977); *Goldberg v. Shapiro*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,813 (S.D.N.Y. 1974).

Plaintiff argues that as a matter of elementary accounting only intent to defraud or a reckless disregard for the truth could lead to the overstatements in the case at bar. Thus, he notes that accounts receivable differ from other corporate assets in that they necessarily present no problems of valuation or judgment. In his view,

> [w]hat is at issue here is a[n] . . . overstatement in accounts receivable— that is, in sales. No significant problem in valuation or in judgment . . . arises in accounting for sales. The seller agrees to deliver particular goods or services; the buyer agrees to pay a certain amount in exchange. Once the agreement is made, the account receivable goes on the seller's books; an account payable on the buyer's. The amount of each is the amount of the sale; it doesn't change; it is whatever the contract says it is.

Plaintiff's Memorandum at 5. Plaintiff concludes that the overstatements upon which he relies necessarily reflect sales that never took place and, therefore, that there must have been serious deficiencies in PMM's auditing techniques. But this court has uniformly held that overstatements of accounts receivable or net sales, without more, are merely "neutral facts" from which no inference of impropriety logically flows. *See, e. g., Schmeidler v. Lazard Freres & Co.* (dismissing complaint in action for securities fraud based on overstatement of "net sales"); *Goldberg v. Shapiro* (allegation regarding overstatement of net income and accounts and notes receivable held insufficiently particular under Rule 9(b)). That the value of Reade's accounts receivable happens to have been overstated by some amount does not, therefore, necessitate the conclusion that PMM had any intent to defraud.

■ Nor can an inference of fraud be drawn from PMM's "certification" of Reade's inaccurate financial reports without some showing that PMM failed to perform an examination of Reade's financial statements in accordance with generally accepted auditing standards and that this amounted to a "fraudulent breach of duty." *Gross v. Diversified Mortgage Investors*, 431 F.Supp. at 1088; *see Levy v. First National City Bank*, slip op. at 3. Here, since plaintiff's allegation concerning the falsity of PMM's certifications appears only in his memorandum and has not been incorporated into his complaint, no such showing has been made. Even if it were, under Rule 9(b) plaintiff would still be required to indicate in his complaint those further procedures that should have been performed, and why omission of them made PMM's certifications of Reade's financial statements false.[13] *Gross v. Diversified Mortgage Investors*, 431 F.Supp. at 1088–1089.

11. The Supreme Court has recently defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). *See id.* at 211 n. 31, 96 S.Ct. 1375 (more than negligence required to recover under section 18(a)).

12. *See* Plaintiff's Memorandum at 4.

13. To the extent that these allegations would rely upon information and belief, plaintiff would also need to state the basis for his belief. See text accompanying notes 7 and 8, *supra*.

seems likely that plaintiff inadvertently included the Form 10–K for calendar year 1975 in his complaint, since he notes that he relies upon five documents "filed with the SEC in the years 1970 through 1975," though six Forms 10–K would have been filed during that six-year span of time. If plaintiff actually meant to refer to the Form 10–K for calendar year 1974 (which was submitted during calendar year 1975), he should take care to correct that error prior to serving any amended complaint.

■ PMM also argues that under Rule 9(b) plaintiff cannot allege knowledge or recklessness in conclusory terms. The court disagrees. While it is true that the circumstances constituting fraud must be stated with particularity, knowledge or recklessness can be averred generally—even in a complaint alleging securities fraud. *Heit v. Weitzen*, 402 F.2d 909, 914 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); *Raskas v. Supreme Equipment & Systems Corp.*, [1976–1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,694 at 90,428 (E.D.N.Y.1976); *Oleck v. Fischer*, 401 F.Supp. 651 (S.D.N.Y.1975). *But see Rich v. Touche Ross & Co.*, 415 F.Supp. 95, 101 (S.D.N.Y.1976). Consequently, if plaintiff should serve an amended complaint sufficiently particularizing the basis for his claim of fraud, it would not be subject to dismissal merely for failure to set forth facts supporting the assertion that PMM (or any other defendant) acted intentionally or in reckless disregard of the truth. *Cf. Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (2d Cir. 1973) (plaintiff must establish wilful or reckless disregard of the truth in order to recover under rule 10b–5). As a practical matter, however, plaintiff may need to plead facts showing that PMM acted with either knowledge that the Reade financials were false and misleading, or in reckless disregard of the truth, if he is to state the circumstances surrounding the fraud with particularity.

#### 2. Count Two

■ Count Two essentially repeats the allegations made in Count One of the complaint, and all of the observations made with respect to the sufficiency of Count One, therefore, apply as well to Count Two. However, Count Two differs from Count One in that plaintiff also alleges upon information and belief that the

> defendants employed various record keeping, accounting and financial devices with respect to the accounts receivable of [Reade] during the period 1970 to date and either failed to keep or destroyed business records of said defendant (which would otherwise have been kept in the ordinary course of its business) and concealed the absence of same in such manner as to conceal the true facts with respect thereto from the S.E.C. and other interested government agencies, from professional securities analysts and from the investing public.

¶ 36. Count Two also adds an allegation that "[PMM] failed to disclose in its certifications of [Reade's] 10–K's either the absence of these business records or the existence of the foregoing scheme and course of conduct." *Id.* But these additional allegations suffer from many of the shortcomings noted above. Thus, plaintiff makes statements upon information and belief without stating any basis for believing in the truth of the allegations made. Also lacking is any indication that PMM engaged in conduct amounting to fraud. Plaintiff cannot merely rely on the blanket allegation that unnamed "defendants" concealed material facts regarding Reade's accounts receivable from the public, for PMM is entitled to be informed of those specific acts or omissions forming the basis for plaintiff's conclusion that PMM itself engaged in fraud. Moreover, absent some showing of scienter, plaintiff cannot rely upon PMM's alleged failure to disclose the lack, or indeed even the destruction, of Reade's business records. And plaintiff must also specify the records which he contends should have been kept.

#### B. Rule 12(b)(6).

PMM contends that all of Count One and much of Count Two would also have to be dismissed for failure to state a legally sufficient claim even if plaintiff were able to overcome his failure to meet the requirements of Rule 9(b). Specifically, PMM argues that in Count One of the complaint plaintiff has not adequately shown reliance, a causal nexus between the alleged misrepresentations and his alleged loss, or compliance with the statute of limitations. And PMM also maintains that neither count states a claim upon which sellers of Reade common shares would be entitled to relief.

The court first turns to the contention that reliance has not been adequately alleged under section 18(a). That section provides that:

"Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder . . ., which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading."

Since section 18(a) applies to documents, such as Form 10–Ks, which must be filed pursuant to SEC rules, *Heit v. Weitzen*, 402 F.2d at 915; *see Fischer v. Kletz*, 266 F.Supp. 180, 189 (S.D.N.Y.1967), plaintiff may be able to recover damages for misrepresentations made in the 10–K forms. However, constructive reliance will not suffice. *Heit v. Weitzen*, 402 F.2d at 916. Plaintiff may only recover if he is able to establish reliance on the actual 10–K form. *Id.; accord, Rich v. Touche Ross & Co.*, 415 F.Supp. at 102; Note, Accountants' Liabilities for False and Misleading Financial Statements, 67 Colum.L.Rev. 1427, 1445 n. 42 (1967).

The complaint states only that plaintiff acted "in reliance upon the false financial statements, . . . documents and reports filed with the S.E.C. at the behest of the defendants" (¶ 26). Thus, plaintiff has not specifically alleged that he actually saw the 10–K forms that were filed, *Barotz v. Monarch General, Inc.*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,933 at 97,237 (S.D.N.Y.1975), or that he saw relevant parts of the 10–K forms reported in some other source, see 2 A. Bromberg, Securities Law § 8.4(469) (1975). But without some such averment of actual knowledge, plaintiff has not stated a cause of action under section 18(a) of the Act.[14]

Moreover, section 18(a) has, as Professor Loss puts it, a double-barreled causation requirement. 3 L. Loss, Securities Regulation 1752 (2d ed. 1961). Thus, plaintiff must also demonstrate that he sustained damages by relying upon false or misleading "filed" statements and that the purchase or sale price of his shares was affected by such statements. *Rich v. Touche Ross & Co.*, 415 F.Supp. at 103. PMM contends, in this regard, that plaintiff must specifically allege whether the misstatement inflated or depressed the price at which he purchased or sold Reade securities. It is plain from other allegations of the complaint, however, that plaintiff's damages, if any, are the result of inflation in the value of Reade's common stock, and the court consequently will not require plaintiff to amend his complaint in this respect.

The court therefore turns to the question of plaintiff's compliance with the express statute of limitations for section 18(a) actions, which is found in section 18(c) of the Act, 15 U.S.C. § 78r(c) . . . (1970).

When Congress creates a new right of action by statute and in that same statute expressly limits the time in which a suit to enforce it may be brought, compliance with the period of limitations must be affirmatively pleaded before a suit to recover on the right of action may be instituted. *See Matheny v. Porter*, 158 F.2d 478, 479–80 (10th Cir. 1946); *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1165 (S.D.N.Y.1974); 3 L. Loss, *supra*, at 1744. Accordingly, since section 18(a) created a new right of action,

---

**14.** Plaintiff contends that he need only plead reliance as an ultimate fact and argues that actual knowledge of the 10–K forms is merely evidentiary detail to be proved at trial. Plaintiff's Memorandum at 13. As Judge Tyler once noted, however, the "present law in this circuit" is to the contrary. *Barotz v. Monarch General, Inc.*, at 97,237. Requiring plaintiff to plead actual "eyeball" reliance is particularly appropriate here in view of the peculiar manner in which reliance is alleged under Count Two. *See* text, *supra*, at p. 521.

the complaint in the instant action must show that suit was brought, as section 18(c) requires, "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 3 L. Loss, *supra*, at 1744.

Plaintiff has not alleged the date on which he learned of the misrepresentations relied upon and, therefore, has not established compliance with the first aspect of section 18(c)—the "one year after discovery" test. It is true that counsel for the plaintiff makes the necessary averment in his memorandum of law, but a party is not entitled to amend his pleading through statements in his brief. *Chambliss v. Coca-Cola Bottling Corp.*, 274 F.Supp. 401, 409 (E.D.Tenn.1967), *aff'd* 414 F.2d 256 (6th Cir. 1969), *cert. denied*, 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970). Consequently, to state a cause of action in an amended complaint, plaintiff will have to aver that he brought the instant action within one year after discovering the facts constituting his cause of action under section 18(a).

It will also be necessary for plaintiff to set forth facts demonstrating that this action was brought within three years after his cause of action "accrued." PMM contends that a section 18(a) cause of action accrues at the time that the document or report containing the alleged misstatement is filed with the SEC and argues that plaintiff will therefore not be able to assert any claim arising out of any report or document filed by Reade more than three years before this suit was brought. However, PMM's interpretation of the limitations period for section 18(a) actions is incorrect.

█ It has generally been held that a cause of action accrues and, therefore, that the statute of limitations begins to run on the date that the injury complained of occurs. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338-39, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Hoover v. Allen*, 241 F.Supp. 213, 226 (S.D.N.Y.1965). But that definition does not resolve the problem presented here since the injury in question arguably could have occurred either at the time that the SEC filing was made or at the time that plaintiff allegedly purchased or sold Reade securities in reliance upon Reade's fraudulent Form 10–Ks. The court consequently cannot rely upon a technical definition of the word "accrued" and must interpret that term "in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." *Reading Co. v. Koons*, 271 U.S. 58, 62, 46 S.Ct. 405, 70 L.Ed. 835 (1926); *accord, Crown Coat Front Co. v. United States*, 386 U.S. 503, 517, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

In its original form, section 18 required only that suit be brought within two years after "discovery of the violation upon which it [was] based." S. 2642, 73d Cong., 1st Sess. § 17(e) (1934). During hearings on the proposed statute, however, Senator Kean suggested that liability be limited to two years "after filing the papers," so that suits could not be maintained for generations to come. Hearings Before the Senate Banking and Currency Comm., 73d Cong., 1st Sess., Pt. 15 at 6565 (1934). Senator Kean also indicated, in response to a question, that he could accept an amendment "to the effect that the action may be maintained at any time within 2 years after the discovery of the violation, but in no event more than 6 years *after the actual filing of the report.*" *Id.* (emphasis added). Since the Senate Banking and Currency Committee ultimately reported out a bill which provided that no action was to be maintained unless it was brought "within two years after discovery of the facts constituting the cause of action, nor unless brought within six years after such cause of action accrued," S. 3420, Sen.Rep.No.792, 73d Cong., 2d Sess.—thereby adopting Senator Kean's recommendation of an absolute cutoff date for actions under what is now section 18(a)—PMM urges that the term "accrued" in the Banking and Currency Committee bill must have referred to the date on which an allegedly false statement was filed with the SEC. Accordingly, since

the present section 18(c) merely halves the time periods suggested in the Banking and Currency Committee report, PMM argues that its interpretation of the word "accrued" should be applied herein.

But it does not follow that Congress intended to adopt Senator Kean's recommendation as to when the statutory clock should begin to run merely because it ultimately incorporated his suggestion for an absolute period of limitations under section 18(c). Indeed, if the drafters of section 18(c) had wanted to make the filing of papers the determinative event, as PMM suggests was the case, they undoubtedly would not have made reference to when the "cause of action accrued." Their use of that phrase more logically indicates an intention to measure the period of limitations from the time that a plaintiff first became entitled to prosecute his claim. *Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir. 1973); *Sword Line, Inc. v. United States*, 228 F.2d 344, 347 (2d Cir.), *adhered to*, 230 F.2d 75 (2d Cir.), *aff'd*, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493 (1956); *Barninger v. National Maritime Union*, 372 F.Supp. 908, 913 (S.D. N.Y.1974). And, under section 18(a), that can only be after the plaintiff herein either purchased or sold shares of Reade's common stock.

■ The correctness of this interpretation of section 18(c) is underscored by comparing the limitations provisions in other specific civil liability sections of the Act. Section 9(e) of the Act, 15 U.S.C. § 78i(e) (1970), which prohibits manipulation of registered securities, requires that an action be brought within "one year after the discovery of the facts constituting the violation and within three years after such violation," and section 16(b), 15 U.S.C. § 78p(b) (1970), which restricts insider trading, precludes any recovery in an action instituted "more than two years after the date [that] profit [from short-swing trading] was realized." Thus, the limitations provisions of these sections unambiguously begin to run at the time that wrongdoing first occurs.

If Congress had intended a similar result under section 18(c), it undoubtedly would have stated that suits under section 18(a) had to be brought within three years after the misleading or false statement was filed with the SEC, rather than resorting to the use of the word "accrued." Indeed, the report of the Conference Committee on the Act expressly noted that the substitute bill required that an action under section 18(c) be brought within 1 year after discovery and in any event within 3 years after the cause of action accrued, even though the House bill had provided that no action could be maintained "*unless brought within 3 years . . . after the violation upon which it [was] based.*" H.R.Rep.No. 1838, 73d Cong., 2d Sess. 36 (1934).

The court therefore holds that a section 18(a) cause of action accrues within the meaning of section 18(c) only when the purchase or sale of securities for which damages are sought has taken place. To state a cause of action, the amended complaint must therefore specify those purchases or sales, if any, which were made by plaintiff on or after January 11, 1974.

Finally, PMM contends that plaintiff, as a seller, cannot maintain this action in either his individual capacity or on behalf of a class. PMM bases this claim upon its theory that plaintiff, and other class members, could not have sustained any compensable losses by selling Reade securities during the period of time covered by the complaint.[15] PMM observes that shareholders who acquired their shares prior to the filing of the allegedly fraudulent statements actually benefitted from the fraud by being able to sell their shares before there was any disclosure of Reade's inflated worth, and suggests that those who both purchased and sold their Reade shares during the period covered by the complaint necessarily have not lost more on their purchases than the amount that they gained when making their subsequent sales. Since plaintiff has not specified the transactions upon which he relies, any discussion of this issue at this

---

15. Under section 28(a) of the Act, 15 U.S.C. § 78bb(a) (Supp. V 1975), a litigant may not

recover an "amount in excess of his actual damages on account of the act complained of."

time would necessarily be premature. Consideration of the question will therefore be deferred pending service of an amended complaint indicating when plaintiff purchased and sold Reade securities and at what price. *Gross v. Diversified Mortgage Investors*, 431 F.Supp. at 1087, 1090; *Rich v. Touche Ross & Co.*, 68 F.R.D. at 247; *see Segal v. Gordon*, 467 F.2d at 608.

## CONCLUSION

PMM's motion to dismiss the complaint as against it is granted for the reasons stated above but plaintiff is given leave to serve a suitable amended complaint within twenty days.

SO ORDERED.