**LINDNER DIVIDEND FUND, INC., a Missouri corporation and Whitehill Capital, Inc., a New York corporation, Plaintiffs,**

v.

**ERNST & YOUNG, a partnership consisting of Certified Public Accountants, formerly known as Ernst & Whinney, Defendant.**

Civ. A. No. 92–12372–WJS.

United States District Court, D. Massachusetts.

March 23, 1995.

Benedict Bader, I. Walton Bader, Bader & Bader, White Plains, NY, for Lindner Dividend Fund, Inc., and Whitehill Capital, Inc.

Laura Steinberg, Sullivan & Worcester, Nancy Israel, Boston, MA, Daniel F. Kolb, Timothy J. Mayopoulos, Jacqueline O. LiCalzi, Norman B. Champ, III, Davis Polk & Wardwell, New York City, for Ernst & Whinney.

*MEMORANDUM AND ORDER ON DE-FENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT*

SKINNER, Senior District Judge.

This is an action for violations of section 18(a) of the Securities and Exchange Act of 1934, 15 U.S.C. 78r(a), gross negligence under Missouri and New York state law, and violations of the Missouri Uniform Securities Act brought by plaintiffs to recover damages suffered allegedly as a result of their purchase of securities in reliance on defendant's false and misleading statements. Defendant moves to dismiss the amended complaint pursuant to Fed.R.Civ.P. 9(b), failure to plead fraud with particularity, and pursuant to Rule 12(b) for lack of jurisdiction over the subject matter, for failure to state a claim upon which relief can be granted and for being time-barred under the applicable statute of limitations.

## Background

Plaintiffs Lindner Dividend Fund, Inc. and Whitehill Capital, Inc. commenced this action to recover damages allegedly suffered as a result of their purchase of preferred stock and debentures of the Bank of New England Corporation ("BNEC") during the period from August 1989 through January 1990. The initial complaint was filed on October 2, 1992 and alleged five causes of action: violations of sections 10(b) and 18(a) of the Securities and Exchange Act of 1934 ("1934 Act"), pendent state law claims for common law fraud and gross negligence, and a claim for violations of the Missouri Uniform Securities Act.

Defendant filed a motion to dismiss the initial complaint on July 23, 1993. At a conference held on July 28, 1993, plaintiffs' counsel indicated to this court that plaintiffs would file an amended complaint rather than respond to defendant's motion. Plaintiffs filed their amended complaint on October 25, 1993.

Count I of the amended complaint alleges violations of section 18(a) of the 1934 Act. Count II alleges "gross negligence and/or reckless conduct under common law." Count III alleges violations of section 409.101 of the Missouri Uniform Securities Act. The amended complaint does not contain the section 10(b) and common law fraud claims. At the July 28, 1993 conference, this court. informed plaintiffs that any claims in the initial complaint not repleaded in the amended complaint would be dismissed. Accordingly, the section 10(b) and common law fraud claims of the original complaint are dismissed.

Like the initial complaint, the crux of the amended complaint is the allegation that defendant certified BNEC's misleading 1988 10–K Annual Report and the "integrated Annual Report to Stockholders of 1988" which were both filed with the SEC on March 20, 1989. Plaintiffs allege that the information in the filed reports regarding the amount of non-performing loans at BNEC's subsidiary banks and the adequacy of loan loss reserves presented a misleading picture of BNEC's overall financial stability. As with the initial complaint, the amended complaint consists primarily of numerous excerpts from BNEC's public filings, which at first reported BNEC's relatively healthy financial performance, and later announced serious troubles.

The amended complaint avers that the "false and misleading" nature of loan loss reserves and other financial information became evident when BNEC announced a net loss of $1.05 billion and an additional loan loss provision of $1.5 billion for year-end 1989. Plaintiffs posit that BNEC's earlier statements that its loan loss reserves were adequate were due to fraud and other misconduct by defendant.

The amended complaint alleges that defendant audited BNEC's 1988 year-end financial statements, that the statements failed to disclose "the number and amount of non-performing loans" of BNEC's subsidiary banks and "adequacy of the loan loss reserves," that defendant's audit "did not comply with proper accounting standards," and that a "proper" audit "would have properly disclosed the number and amount of non-performing and partially performing loans" of the subsidiary banks which could have then been used to determine the "proper amount of loan loss reserves."

Plaintiffs further allege on information and belief that defendant

knew, because of the decline in the New England Real Estate Market during 1988 ... and the actual loan loss experience during 1988 ... the amount of loan loss reserve and the overall quality of the outstanding loans of the subsidiary banks required a substantial increase in the loan loss reserve and adequate footnoting of [defendant's] certification.

The amended complaint also states that defendant's "deferr[al] to management's estimation of the amount to be allowed for possible credit losses ... in and of itself, constitutes a failure of proper auditing practice."

## Section 18(a) Claims

Section 18(a) of the 1934 Act permits persons who, in reliance on materially misleading statements in reports or other documents filed with the Securities and Exchange Commission pursuant to the 1934 Act, purchased or sold a security whose price was affected

by such statements, to bring suit against persons who "make" or "cause" such statements "to be made."

Defendant moves to dismiss the federal claim on three grounds: a statute of limitations bar, failure to state a claim upon which relief may be granted, and failure to plead fraud with particularity. Defendant also moves to dismiss the state law claims under the *Gibbs* doctrine, or alternatively, on the grounds of a limitations bar and failure to state a claim upon which relief may be granted.

"For purposes of a motion to dismiss, I assume the well-pleaded facts as they appear in the complaint to be admitted, indulging every reasonable inference in favor of the non-moving party," *Slavin v. Morgan Stanley & Co., Inc.,* 791 F.Supp. 327, 329 (D.Mass.1992), *citing Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987), while at the same time "eschew[ing] any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

## I. Statute of Limitations

■ Section 18 provides that a plaintiff must bring an action under that section "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). A cause of action accrues within the meaning of section 18(c) when the purchase of securities for which damages are sought has taken place. *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 527 (S.D.N.Y.1977). Plaintiffs made two purchases of BNEC's preferred stock in August 1989, four purchases in December, and three in January of 1990. Accordingly, claims based on the August purchases are time-barred because they occurred more than three years prior to the filing of the initial complaint.

■ Plaintiffs' purchases of securities during December 1989 and January 1990 are within the three-year limitations period. In regard to these purchases, the amended complaint alleges that the suit was commenced within one year "of the date when the wrongs involved were discovered or could have been discovered with reasonable diligence" because plaintiffs did not "discover" the claim until they received a "Notice of Pendency of Class Action" in September 1992. This assertion is untenable in light of the allegations in the amended complaint that results for fiscal year 1989 showed losses and loss provisions in the billions of dollars. Even though plaintiffs allege that these losses were "inadequate to disclose the true financial picture of BNEC," a great deal of the picture was by then clear. By some time in 1990, when this information of losses in 1989 was made public, plaintiffs were sufficiently aware of the facts constituting this cause of action to start the running of the limitations period. *See Slavin,* 791 F.Supp. at 329–30 (finding that investors in the same BNEC securities were on "inquiry notice" of the alleged securities claims based on similar operative facts by early 1990).

## A. Class Action Tolling

■ In opposing defendant's Motion to Dismiss, plaintiffs do not rely on their claim that they did not "discover" their cause of action until September 1992 but rather invoke the class action tolling doctrine and a tolling agreement between defendant and the putative class in the Bank of New England shareholder and derivative litigation to protect them from the limitations bar.

The class action tolling doctrine was enunciated in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Under *American Pipe,* "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554, 94 S.Ct. at 766. The commencement of the class action suspends the running of the limitations period during the pendency of the motion to strip the suit of its class action character. 414 U.S. at 561, 94 S.Ct. at 770. Plaintiff's amended complaint alleges that the pendency of the class actions under the caption *Bank of New England*

*Corp. Class Action Litigation,* 89 Civ. 2582–S tolled the statute of limitations. Plaintiffs cannot avail themselves of this argument for two reasons.

First, although defendant was initially named in some of the various class action suits filed in this court, the plaintiffs in those actions chose not to assert claims against the defendant in the consolidated and amended class action complaint, under the same caption, which superseded the earlier complaints. *See, e.g., International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) (An amended complaint "supersedes the original and renders it of no legal effect."), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). Since defendant Ernst & Young was not named as a defendant in the superseding complaint, the class action tolling doctrine does not apply. *See, e.g., Arneil v. Ramsey,* 550 F.2d 774, 782 n. 10 (2d Cir.1977) (limitations period tolled only as to defendants named in the class action).

Plaintiffs argue that they are nevertheless entitled to such tolling because they were not informed that the prior class action was not proceeding against the defendant. Plaintiffs cite no authority for this proposition. Generally, decisions by class counsel to drop certain defendants from individual suits, made to refine issues and not as a result of settlement, are within counsel's discretion and do not necessarily require notice to the putative class. *See Manual For Complex Litigation Second* § 30.212 (1986); *see also Longden v. Sunderman,* 123 F.R.D. 547, 558 (N.D.Texas 1988) (the requirement of Fed.R.Civ.P. 23(a)(4) that the representative parties fairly and adequately protect the interests of their class does not remove decisions to drop certain defendants from counsel's discretion). A rule tolling the limitations period until a potential plaintiff discovered that a potential defendant was no longer a party to a class action would unfairly penalize that defendant for the plaintiff's failure to stay informed of proceedings to which the plaintiff is a party.

Additionally, the Supreme Court has noted that the class action tolling rule is not inconsistent with the purposes served by statutes of limitations of putting defendants on notice of adverse claims and of preventing plaintiffs from sleeping on their rights. *Crown, Cork & Seal Co. Inc. v. Parker,* 462 U.S. 345, 352–53, 103 S.Ct. 2392, 2396–97, 76 L.Ed.2d 628 (1983). These ends are met when the class action is filed: Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights, and a class complaint puts defendants on notice not only of the claims against them but also of the number and generic identities of the potential plaintiffs. *Id.* However, at the time when a defendant is dropped from the class action, that defendant is no longer notified of any claims against it, and a potential plaintiff is then required to act upon any claims it hopes to assert.

Second, class action tolling applies only to complaints that assert the same causes of action as the original claim. *Burns v. Ersek,* 591 F.Supp. 837, 842–43 (D.Minn.1984); *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.,* 467 F.Supp. 227, 259–60 (W.D.Tex.1979) (pendency of section 10(b) class action did not toll the statute of limitations for individual's section 11 claim). "Only when there is complete identity of the causes of action will the protections [against the running of the limitations period] necessarily exist." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 468 n. 14, 95 S.Ct. 1716, 1724 n. 14, 44 L.Ed.2d 295 (1975) ("Only where there is a complete identity of the causes of action will the protections suggested ... necessarily exist ...," even though both claims, one based on Title VII and the other on 42 U.S.C. § 1981, were based on the same set of factual circumstances.). While a subsequent individual suit need not necessarily be identical in every respect to an earlier class action for the limitations period to be tolled, *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1489 (9th Cir.1985), the class action suit must give defendant ample notice of plaintiff's individual claim. Such notice is given when the individual claim involves the same allegations that were made in the class suit. 754 F.2d at 1489.

Here, plaintiffs assert a section 18 claim while plaintiffs in the earlier class action against defendant asserted violations of section 10(b). The facts required to be pleaded

and proved under section 10(b) are significantly different from the facts that give rise to section 18 claims. To state a claim under section 10(b), a plaintiff must allege acts indicating an intent to deceive, manipulate, or defraud. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976). A section 18 plaintiff must plead and prove that a document filed with the SEC contains a material misstatement or omission which the plaintiff read and relied on in purchasing or selling securities at a price affected by such statement. 15 U.S.C. § 78r(a). One court has held that an intent to deceive is not an element of a section 18 claim. *Magna Inv. v. John Does One Through Two Hundred,* 931 F.2d 38 (11th Cir.1991). Furthermore, whereas the onus of proving defendant acted in bad faith is on the plaintiff asserting a claim under section 10(b), under section 18, liability is established "unless *the person sued* shall prove that he acted in good faith and had no knowledge that such statement was false or misleading." 15 U.S.C. § 78r(a) (emphasis added); *Ross v. A.H. Robins,* 607 F.2d 545, 556 (2d Cir.), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). In *Decker v. Massey–Ferguson, Ltd.,* 534 F.Supp. 873, 883 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 681 F.2d 111 (2d Cir.1982), the court held that because the "legal standards for bringing an action under § 18 are significantly different from those for 10(b), the original complaint cannot be regarded as having somehow put defendants on notice of a potential claim under § 18." Accordingly, the tolling doctrine of *American Pipe* does not apply to plaintiffs' claims.

### B. Tolling Agreement

■ More availing to plaintiffs is their argument that the section 18(a) claims are timely because of a tolling agreement between defendant and the putative class in *Bank of New England Corp. Class Action Litigation.* Subject to its terms, the tolling agreement and a subsequent extension extended the applicable statutes of limitations through October 22, 1993.

The agreement was entered into by the named plaintiffs in the class action litigation "in behalf of the members of the class that said parties sought to represent, including persons who purchased Bank of New England Corporation securities ... between April 22, 1987 and January 19, 1990" and defendant. The agreement was to·"run[ ] in favor of all putative class members in the consolidated amended complaint" and "class members who do not opt out are to be regarded as parties to this agreement protected by this agreement." Plaintiffs fall under the agreement's penumbra of protection.

The agreement, by subsequent extension, expressly conditioned the tolling of the statute of limitations on the plaintiffs in the class and derivative litigants filing claims against defendant by October 22, 1993. The original agreement provided that if the

> plaintiffs do not file any such claims [against Ernst & Young] by ... April 22, 1993 ... this [agreement] shall cease to have any effect and E & Y may therefore assert any statute of limitations defense it may have or would have had without regard for the agreement reflected in this paragraph, including without limitation any statute that may have run during the pendency of agreement.

Defendant argues that no claims were filed against defendant by *named* plaintiffs prior to October 22, 1993, and therefore by its own terms the agreement is without effect and cannot be relied upon by plaintiffs. However, the terms of the agreement do not condition tolling on the filing of suit by a *named* plaintiff, but rather merely on the filing of suit by "plaintiffs." In the agreement's opening paragraph, the "named plaintiffs" are distinguished from the "members of the classes they seek to represent," and the operative paragraph of the agreement does not state that "named plaintiffs" must file suit by a certain date. The express condition of the agreement was met when any plaintiff filed suit against defendant prior to the deadline.

Plaintiffs, as members of the plaintiff class in *Bank of New England Corp. Class Action Litigation,* were entitled to the protections of the tolling agreement, and properly availed

themselves of those protections by filing suit against defendant prior to October 22, 1993.

## II. Failure to State a Claim

■■■ "Section 18 requires that a plaintiff establish knowledge of and reliance upon the alleged misstatements contained in any document filed with the SEC." *Ross v. A.H. Robins Co.,* 607 F.2d at 552. Constructive reliance is not sufficient. *Heit v. Weitzen,* 402 F.2d 909, 916 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). A plaintiff must specifically allege that he actually read a copy of the document filed with the SEC, or relevant parts of the document reported in some other source, and was induced to act upon specific misrepresentations in the document. *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,* 794 F.Supp. 1424, 1438 (D.Ariz.1992); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. at 525.

The amended complaint alleges that plaintiffs "specifically relied upon various statements contained in said reports." These "various statements" are quoted throughout the amended complaint. "Indulging every reasonable inference in favor of the non-moving party," I find that plaintiffs have sufficiently met their burden at this stage of the litigation of alleging that they saw and relied upon the alleged misstatements contained in the documents.

To plead a section 18 claim properly, plaintiffs must allege not only specific reliance but also that they sustained damages by relying upon false or misleading statements filed with the SEC and that the purchase or sale price of his shares was affected by such statements. *Jacobson,* 445 F.Supp. at 525; *Rich v. Touche Ross & Co.,* 415 F.Supp. 95, 103 (S.D.N.Y.1976). Defendant suggests that plaintiffs' allegations of reliance and causation are so suspect that they should be disregarded. Plaintiffs purchased BNEC preferred stock in August 1989 at more than $80 per share, and then made four more purchases of BNEC preferred stock in December 1989 and January 1990 at between $42 and $47 per share. Defendant asserts that "it defies common sense that [plaintiff] was relying on the loan loss reserve figures

in the filed 1988 Form 10–K in purchasing all of these shares" in light of the dramatic drop in price.

I agree that plaintiffs' alleged continued reliance on the loan loss reserve figures in December and January when the price of the shares had dropped nearly 50 percent since August is highly suspect. Plaintiffs are not unsophisticated investors. Plaintiffs are corporate investment groups that should have been aware of the declining New England real estate market and should have been alerted to potential problems by dramatic decreases in the prices of securities. In light of plaintiffs' status, I also find it unusual that in December 1989 and January 1990 plaintiffs were still relying on a 1988 10–K that had been filed in March of that year, especially since by that time there were "various published articles and statements" revealing that BNEC would "post substantial losses in the fourth quarter." *Slavin v. Morgan Stanley & Co.,* 791 F.Supp. at 329.

Nevertheless, I find that plaintiffs' allegations that their loss was caused by reliance on various statements contained in forms filed with the SEC, while perhaps subject to challenge, are not "unsupportable conclusions" that should be disregarded on a motion to dismiss. *Ochoa Realty Corp. v. Faria,* 815 F.2d 812, 814 (1st Cir.1987). Continued reliance on the statements may have been unwise, but not necessarily unbelievable.

## III. Failure to Plead Fraud with Particularity

Complaints sounding in fraud or mistake are held to a higher standard of pleading specificity than that of Fed.R.Civ.P. 8. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9 is to provide notice to the defendant of the grounds on which the plaintiff's fraud claim rests, *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985); *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228–29 (1st Cir.1980), to diminish the possibility that a plaintiff with a largely groundless claim will be able to take up the time of a number of other people, with

the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonable hope of prevailing, *Ross v. A.H. Robins Co.,* 607 F.2d at 557; *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975), and to safeguard defendants from frivolous charges which may damage their reputations. *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987).

■ Plaintiffs argue that Rule 9(b) is inapplicable to section 18 claims, suggesting that because the standards of liability under section 18 are broader than under section 10(b), actions under section 18 should not be subject to the more stringent pleading requirements of Rule 9(b). I found no authority for this proposition or for the more general claim that Rule 9(b) is inapplicable to section 18 actions. To the contrary, several courts have held that Rule 9(b) is applicable to section 18 claims. *See, e.g., Denny v. Barber,* 576 F.2d 465, 470 n. 4 (2d Cir.1978) (same pleading requirements apply a *fortiori* to claims under section 18 as under section 10(b)); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 814 F.Supp. 720, 731 (N.D.Ill.1993); *In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 794–95 (S.D.Cal.1990); *Jacobson,* 445 F.Supp. at 522–24. The discouraging of strike suits, protecting of defendants' reputations and providing defendants with proper notice justify applying the strictures of Rule 9(b) to actions under section 18 as well as under section 10(b).

■ Plaintiffs further contend that fraud is not an element of a section 18 claim, but rather that all section 18 requires is negligent misrepresentation. Without deciding whether fraud is an element of such a claim or not, I note that this district has "clearly held that Rule 9(b) applies to claims of negligent misrepresentations" because the "same rule against pleadings on 'information and belief' and the same policy against allowing 'strike suits' apply to negligent misrepresentation claims as apply to outright claims of fraud." *In re Stratus Computer, Inc. Sec. Litig.,* 1992 WL 73555, at *6 (D.Mass. Mar. 27, 1992); *see also Howard v. Cycare Sys., Inc.,* 128 F.R.D. 159 (D.Mass.1989); *Morgan v. Financial Planning Advisors, Inc.,* 701 F.Supp. 923 (D.Mass.1988).

This circuit has interpreted Rule 9(b) to require "specification of the time, place, and content of an alleged false representation ..." *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d at 228. After reviewing the amended complaint, I am satisfied that plaintiffs have adequately specified the time, place and contents of allegedly false representations. The amended complaint clearly sets forth the allegedly misleading statements regarding the adequacy of loan loss allowances contained in the 1988 10–K report and the Integrated Annual Report to Stockholders of 1988 filed with the SEC on March 20, 1989.

■ In addition to specifications of time, place and the content of alleged misrepresentations, plaintiffs are required to plead a factual basis that would make it reasonable to determine that a statement was materially false or misleading. *Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir.1992) (citations omitted). While plaintiffs need not specify the circumstances or evidence from which fraudulent intent could be inferred, the complaint must provide some factual support for the allegations of fraud (or mistake). *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991).

■ While I assume factual allegations to be true when passing on a motion to dismiss, this tolerance does not extend to legal conclusions or bald assertions. *Resolution Trust Corp. v. Driscoll,* 985 F.2d 44, 48 (1st Cir.1993). General allegations must be supported by a specific factual basis. Facts are susceptible to objective verification while conclusions are often empirically unverifiable. Conclusions represent the pleader's reactions to and inferences from the underlying facts.

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

*Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

The amended complaint contains conclusory assertions that defendant's audit "did not comply with proper accounting standards," and that if proper accounting standards had been employed, they "would have properly disclosed the number and amount of non-performing and partially performing loans" of BNEC's subsidiary banks, which would then have been used "to determine the proper amount of loan loss reserves." The amended complaint does not "give examples · of problem loans that [defendant] should have caught, or explain how it did or should have recognized that the provisions for reserves established by [BNEC's] loan officers were inaccurate." *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). The complaint does not state the actual auditing standards, accounting principles or standards of fair reporting purportedly violated. *See Decker v. Massey–Ferguson, Ltd.*, 534 F.Supp. 873, 883 (S.D.N.Y.), *aff'd in part, rev'd in part on other grounds*, 681 F.2d 111 (2d Cir.1982). Nor does the complaint attempt to indicate the manner in which those principles were allegedly disregarded. *See In re The One Bancorp Sec. Litig.*, 135 F.R.D. 9, 12–13 nn. 8 and 9 (D.Me. 1991). Plaintiffs' conclusion that "the loan loss reserve financial information with respect to the subsidiary banks of [BNEC] contained in the [1988 10–K report] ... was totally inadequate" and a result of a failure to conform to "appropriate accounting practice," is meaningless without some particularization of the manner in which the defendant's actions did not so conform. *See Weinberger v. Kendrick*, 451 F.Supp. 79, 82–84 (S.D.N.Y. 1978). Such conclusions are not logically compelled by the lone stated fact of BNEC's financial demise.

In *DiLeo v. Ernst & Young*, plaintiffs alleged, as they do here, that a substantial increase in loan loss reserves is evidence of wrongdoing with respect to earlier statements that the reserves were adequate. 901 F.2d at 626–27. The Seventh Circuit rejected the plaintiffs' argument and affirmed dismissal of the complaint under Rule 9(b) observing:

> The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less than rosy. The plaintiff contends that the difference must be attributed to fraud. 'Must be' is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud.... Rule 9(b) required the district court to dismiss the complaint, which discloses none of the circumstances that might separate fraud from the benefit of hindsight.

901 F.2d at 627–28 (citations omitted).

Similarly, courts in this district, in the wake of the collapse of the New England real estate market, have been flooded with section 10(b) complaints alleging that substantial increases in loan loss reserves provide factual support for a claim that earlier statements of adequate reserves were fraudulent. Such complaints have not survived scrutiny under Rule 9(b). *See, e.g., Driscoll v. Landmark Bank for Sav.*, 758 F.Supp. 48, 53 (D.Mass. 1991) ("Plaintiff's allegation of [defendant's] insufficient loan loss reserves ... are all so conclusory in nature that they could easily apply to any bank in New England."); *Vachon v. BayBanks, Inc.*, 780 F.Supp. 79, 80–82 (D.Mass.1991) (BayBank's first-quarter losses and doubling of its reserves did not indicate that the bank's earlier statements as to the adequacy of its reserves were the result of fraud.); *Wilkes v. Heritage Bancorp, Inc.*, 767 F.Supp. 1166, 1170–71 (D.Mass.1991); *Akerman v. Bankworcester Corp.*, 751 F.Supp. 11, 12 (D.Mass.1990).

In *Akerman*, I dismissed similar claims of inadequate loan loss reserves, overstated asset quality, and understated non-performing loans pursuant to Rule 9(b). I found allegations based on information and belief, like those here, to be inadequate where such allegations consisted of eighteen paragraphs of excerpts that "simply quote verbatim from the Bank's annual and quarterly reports,"

immediately followed by "conclusory statements that pertain more to mismanagement than to misrepresentation." 751 F.Supp. at 12. Allegations based on "information and belief" do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded, even when the fraud relates to matters peculiarly within the knowledge of the opposing party. *Wayne Inv. v. Gulf Oil Corp.*, 739 F.2d 11, 13–14 (1st Cir.1984) (citing cases).

Although the foregoing cases discuss the pleading requirements for claims brought pursuant to section 10(b), the mere allegation of later substantial increases in loan loss reserves does not provide adequate factual support for a claim that earlier statements of adequate reserves must be attributable to fraud or misrepresentation for purposes of section 18. There is no "fraud by hindsight." *Denny v. Barber*, 576 F.2d at 470. Plaintiffs' factual allegations do not compel and inference of the sort they suggest. In short, even accepting all of plaintiffs' factual allegations as true and drawing all reasonable inferences in plaintiffs' favor, I find that the factual allegations in the amended complaint do not support the claim that defendant's statements were false or misleading. This leaves plaintiffs with only conclusory allegations that a "proper audit" would have disclosed the false and misleading nature of defendant's loan loss reserve statements. *See Lefkowitz v. Smith Barney, Harris Upham & Co., Inc.*, 804 F.2d 154, 156 (1st Cir.1986).

Finally, even if plaintiffs had pled adequate factual support for the inaccuracy of the statements, "without some showing of impropriety, violations of the securities laws may not be inferred from the publication of inaccurate accounting figures alone." *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. at 523. "[T]he legislative history of [section 18] suggests that something more than negligence on the part of the defendant is required for recovery." *Ernst & Ernst v. Hochfelder*, 425 U.S. at 211 n. 31, 96 S.Ct. at 1389 n. 31. The eventual financial deterioration of BNEC does not alone constitute a factual basis for a determination that defendant's earlier statements regarding the adequacy of BNEC's loan loss reserves were materially false or misleading, nor would the mere publication of such statements, even if proven to be inaccurate when made, necessarily lead to a finding of liability. Plaintiffs' section 18 claim does not satisfy the requirements of Rule 9(b).

### Pendent State-law Claims

Plaintiffs' reliance on diversity jurisdiction for their state law claims is insupportable. Diversity jurisdiction requires complete diversity. No plaintiff can have the same citizenship as any defendant at the time the lawsuit is commenced. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch 267) 267, 2 L.Ed. 435 (1806).

For diversity purposes, unincorporated associations are deemed to be citizens of each and every state in which their members are citizens. *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). A limited partnership is a citizen of the state of domicile of each and every limited and general partner. *Carden v. ArKoma & Assoc.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *see also Consumer Sav. Bank v. Touche Ross & Co.*, 613 F.Supp. 249, 251 (D.Mass.1985) ("It has long been held that, for the purposes of diversity, a partnership is a citizen of each jurisdiction of which a partner is a citizen."). Since defendant's partners are citizens of most of the 50 states including New York and Missouri, the states where plaintiffs are incorporated and have their principal places of business, complete diversity is lacking.

Since the federal claim has been dismissed with prejudice at such an early stage in the lawsuit, this is not an appropriate case to exercise pendent jurisdiction over the state-law claims. "[I]f the federal claims are dismissed before trial … the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). While dismissal is not mandatory,

a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction

over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,* the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice ... in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 619, n. 7, 98 L.Ed.2d 720 (1988) (emphasis added). I find no factors in this case suggesting that this court should retain jurisdiction of the state-law claims in the absence of any federal-law claims.

### Conclusion

Plaintiffs are not entitled to a third chance to plead their federal claims. Plaintiffs were put on notice of pleading deficiencies when defendant moved to dismiss the original complaint. Where plaintiffs have had "ample opportunity to allege any facts of which they are aware," and their "First Amended Complaint itself was a response to an earlier charge that the original complaint failed to comply with Rule 9(b), the amended complaint should be dismissed without leave to replead. *Tapogna v. Egan,* 141 F.R.D. 370, 373 (D.Mass.1992). Accordingly, Count I of the amended complaint is **dismissed with prejudice.** Counts II and III are **dismissed without prejudice** to refiling in the appropriate state courts.

Judgment of dismissal shall forthwith enter accordingly.